COMMONWEALTH vs. ARTHUR F. JOSEPH, III
(and a companion case[1]).

Barnstable. March 12, 1981. — May 29, 1981.

Present: HALE, C.J., BROWN, & KASS, JJ.

*Practice, Criminal,* Sentence. *Robbery. Due Process of Law,* Sentence.
*Evidence,* Relevancy and materiality.

The record of a criminal trial did not support the defendants' contention
that the judge deprived them of due process in sentencing by penaliz-
ing them for exercising their right to a trial. [880-882]
At the trial of a defendant charged with armed robbery in connection
with a robbery committed by an unmasked robber with a shotgun and
a masked robber with a knife, evidence that thirty-three hours after
the holdup the defendant was found in the company of the person later
identified as the unmasked robber, that the defendant had on his per-
son shotgun shells, a ski mask identified as the one worn by the masked
robber, and a knife which "look[ed] like the knife" held by the masked
robber warranted a finding beyond a reasonable doubt that the de-
fendant was the masked robber. [882-883]
At the trial of a defendant charged with armed robbery, the judge did not
err in refusing to admit in evidence a composite drawing of the robber
drawn with the help of one of the victims where the victim had made
no in-court nor any other positive identification of the defendant, and
had not been asked whether the composite as drawn was a fair repre-
sentation of the robber. [883]

INDICTMENTS found and returned in the Superior Court
Department on December 13, 1978.

The cases were tried before *Keating, J.*

*Brownlow M. Speer* for Arthur F. Joseph, III.

*Frank J. Richards* for Emulous Williams, Jr.

*Patrick M. Butler,* Assistant District Attorney (*W. James
O'Neill,* Assistant District Attorney, with him) for the Com-
monwealth.

---

[1] Commonwealth *vs.* Emulous Williams, Jr.

HALE, C.J.   On the evening of Saturday, November 25, 1978, twenty-year old Joyce and her sixteen-year old sister Ellen were working as clerks in a store in Hyannis.  About 7:20 P.M. two men entered and said, "This is a stickup." Both men were about 5'7'' in height.  One had a shotgun and was wearing a blue knit hat.  He had a bulbous nose and chipped or crooked front teeth.  That person was identified by Joyce as the defendant Williams.  The other robber wore a green ski mask over his face and had a knife. Williams threatened to shoot Ellen saying, "You're kind of young to die."  The other robber pulled money out of the cash drawer, estimated as totaling $300 and consisting of about seventy-four one-dollar bills and "a lot of tens and fives."  When the robbers left, the sound of a shotgun was heard.  About thirty-three hours later the defendants were found together in an adjacent town and were arrested.  Following a jury trial Williams was convicted on indictments charging unlawful possession of a short barreled shotgun (see G. L. c. 269, § 10[c]) and armed robbery (G. L. c. 265, § 17).  Joseph was convicted on an indictment charging armed robbery.  We find no error.

1.  The defendants claim that the judge deprived them of due process in sentencing by penalizing them for exercising their right to a trial.  Immediately before the second day of trial started the defendants were informed by their lawyer that if they were to plead guilty to the indictments arising out of the robbery and to so much of an unrelated murder indictment as charged manslaughter, the district attorney would recommend sentences of fifteen to thirty or forty years on the robbery charge, but that if the offer were rejected, the district attorney would recommend much stiffer sentences.  See *Bordenkircher* v. *Hayes,* 434 U.S. 357, 364 (1978); compare *Commonwealth* v. *Tirrell,* 382 Mass. 502, 506-510 (1981).  Counsel informed the defendants of their prospects and options and left it to them to decide whether to accept or reject the package.  It would appear that the offer was rejected as trial proceeded and verdicts of guilty

ensued. The district attorney recommended a life sentence for Williams and thirty to fifty years for Joseph.

The defendants ground their due process claim on the judge's response to a statement made by Joseph's attorney concerning the district attorney's recommendation: "We request the Court to consider the more lenient sentence than that sought by the District Attorney. I cannot help but feel that it smacks of revenge on his part, seeking a sentence of that kind, because I think the tendency is not to do that, the enlightened view is not to do that." The judge's reply was, "I am absolutely in disagreement with that tendency." In context the judge's response referred only to the acts of the district attorney. In no way did it indicate a belief that he or any other judge should act vengefully in such a case, nor was the response in any sense a finding that the district attorney's recommendation was motivated by a desire for revenge. In fact, the judge found the opposite saying, "I don't see any vengeance." There is nothing in this record which would permit us to find that the judge was aware of the district attorney's offer or its rejection, but had he been, that would "not warrant an inference that the judge punished the [defendants] for insisting on [their] right to trial." *Commonwealth* v. *Mendez,* 8 Mass. App. Ct. 914, 915 (1979).

We agree with the defendants that a judge may not impose a sentence any part of which is to punish the exercise of the right to a trial. See *Letters* v. *Commonwealth,* 346 Mass. 403, 405-406 (1963). However, the judge's statements made during the course of the presentencing proceedings make it clear that he was not so motivated.[2] The

---

[2] Williams was sentenced to forty to fifty years for armed robbery, with a "from and after" sentence of ten to fifteen years for carrying a sawed-off shotgun. Joseph was sentenced to thirty to fifty years for armed robbery, which was later revoked on the defendant's motion and revised to twenty to thirty years. The defendants appealed to the Appellate Division of the Superior Court, which was the proper forum to obtain "relief from the alleged severity of the sentences." *Commonwealth* v. *Whitehead,* 379 Mass. 640, 664 (1980). The Appellate Division reduced Williams' sentence

judge discussed and considered the extensive criminal records of both defendants, the unlikelihood of their rehabilitation, their acts and threats made during the robbery and their dangerous propensities. Those were proper considerations in imposing sentences. See *Commonwealth* v. *Longval*, 378 Mass. 246, 253 (1979), and cases cited. Had we the power to reduce a sentence, we nevertheless would reject the defendants' requests that the minimum sentence imposed for the armed robbery be reduced to the fifteen years which the district attorney had offered to recommend in the event of pleas.

2. Joseph claims error in the denial of his motion for a required finding of not guilty on the armed robbery charge. There was evidence before the jury that one of the two robbers was wearing a green woolen ski mask which was open only at the eyes (the other robber, identified as Williams, was not masked and was carrying a shotgun). The height and build of Joseph was substantially the same as the description of the masked robber given by the victims. Thirty-three hours after the holdup Joseph was found with Williams. In addition to $385 in cash, Joseph had on his person five twelve-gauge shotgun shells, a green woolen ski mask which he admitted was his and which was identified by Joyce as the one worn by the masked robber, and a knife with a shiny curved blade, which Ellen identified as the knife (and later said, "looks like the knife") which had been in the hands of the masked robber. A twelve-gauge shotgun which matched the description given by the victims was found thirty-four feet from the spot where Joseph was arrested. These circumstances warranted the jury in finding beyond a reasonable doubt that Joseph was the masked robber. *Commonwealth* v. *Latimore*, 378 Mass. 671, 676 (1979). As the evidence in this case went far beyond a

for armed robbery to twenty-five to fifty years and reduced the "from and after" sentence to run concurrently with the longer sentence. No change was made in Joseph's sentence. No suggestion is made that revenge played any part in the Appellate Division's decisions.

mere showing of association with Williams, Joseph is not aided by *Commonwealth* v. *Fancy*, 349 Mass. 196 (1965), by *Commonwealth* v. *Perry*, 357 Mass. 149 (1970), or by the other cases cited in his brief. See *Commonwealth* v. *Borans*, 379 Mass. 117, 148 & n.29 (1979).

3. Williams claims error in the judge's refusal to admit a composite drawing of the unmasked robber drawn by a police officer with the help of one of the victims (Ellen). The drawing was offered after the Commonwealth had rested and without either of the defendants' calling any witnesses. We note that Ellen had made no in-court identification or any other positive identification of Williams. Nor was she asked whether the composite as drawn was a fair representation of the appearance of the unmasked robber. On the posture of the evidence before the court at the time it was offered, the drawing was not, as Williams argues, evidence of an extra-judicial identification. The arguments in Williams' brief, none of which was made to the judge, fail to point out any authentication, relevance or other basis in the record which would permit us to conclude that, on the evidence before the court at the time the composite was offered, the judge erred in refusing to admit it.[3] See *Commonwealth* v. *McKenna*, 355 Mass. 313, 327 (1969); *Commonwealth* v. *Balukonis*, 357 Mass. 721, 725-726 (1970).

*Judgments affirmed.*

---

[3] Our comparison of the drawing with the photographs of Williams selected by the other victim (Joyce) from the police files, and observation of the similarities in them leaves us wondering why Williams would, as his attorney stated to the judge, "want to have the jury look at it."