COMMONWEALTH vs. MICHAEL B. MCGANN.

Worcester. January 16, 1985. — May 15, 1985.

Present: KASS, SMITH, & WARNER, JJ.

*Practice, Criminal,* Assistance of counsel, Postconviction relief, Severance, Discovery, Mistrial, Instructions to jury. *Search and Seizure,* Probable cause, Warrant, Return. *Motor Vehicle,* Receiving stolen motor vehicle. *Receiving Stolen Goods. Common Receiver of Stolen Goods.*

A defendant convicted of receiving stolen goods made no showing that any of several alleged lapses by his trial attorney had constituted ineffective assistance of counsel. [61-62]

In a proceeding for postconviction relief, the judge did not abuse his discretion in refusing to hold a hearing and, instead, considering the motion on the basis of affidavits and other supporting material. [62-63]

A defendant named in five indictments charging receiving stolen property was not entitled to a separate trial on each indictment where all the crimes charged shared common elements of proof and modus operandi, had common witnesses and were of a common character. [63]

There was no merit to a criminal defendant's contentions that there was no probable cause for issuance of a warrant authorizing the search of his automobile shop, that the descriptions in the warrant of the items to be seized were too vague, or that the items listed in the return were different from those described in the warrant. [64-65]

The defendant in a criminal case was not entitled to a mistrial when it was discovered during testimony of a prosecution witness that a diagram and list prepared by the witness at the request of the police before trial had not been furnished to the defense in accordance with a pretrial conference report, where the judge called a recess and allowed the defense an opportunity for further investigation. [65-66]

At the trial of indictments for receiving stolen goods, there was sufficient evidence to warrant the jury in finding that the defendant knew that certain automobile parts were stolen. [66]

At the trial of indictments charging the defendant with receiving stolen goods, the judge properly instructed the jury on the elements of the offense. [66-67]

At the trial of a defendant charged with receiving stolen goods, the judge acted within his discretion in concluding that two verdicts challenged by the defendant were not against the weight of the evidence. [67]

A defendant convicted in one trial on three indictments for receiving stolen goods could be sentenced as a common receiver under G. L. c. 266, § 62, even if he had no prior conviction of receiving stolen goods. [68]

INDICTMENTS found and returned in the Superior Court Department on October 13, 1982.

The cases were tried before *James P. Donohue,* J., and a motion for postconviction relief was heard by him.

*Thomas J. Butters* for the defendant.

*Daniel F. Toomey,* Assistant District Attorney, for the Commonwealth.

KASS, J. Of five indictments for receiving stolen goods upon which the defendant McGann stood indicted, a jury returned verdicts of guilty on three. McGann argues nine grounds of appeal, some of which are before us on direct appeal from the judgment on the verdict and some from the denial of a motion for postconviction relief under Mass.R.Crim.P. 30, 378 Mass. 900 (1979).

What the Commonwealth's evidence described was an operation which, in outline, proceeded as follows. The defendant would buy a badly damaged vehicle from a dealer in wrecks and would, in the process, acquire a valid certificate of title and a usable vehicle identification number (VIN). At his shop in West Swanzey, New Hampshire, the defendant would replace the damaged parts from the wrecks with working parts from stolen vehicles of similar make and vintage, thus producing a saleable vehicle composed significantly from stolen parts, but with a valid vehicular pedigree, i.e., VIN and title. In an appendix to this opinion we trace the paths of six vehicles involved with the three indictments on which the jury found the defendant guilty.

1. *Ineffective assistance of counsel.* Appellate counsel and the defendant have compiled a formidable catalog of asserted lapses by trial counsel. It will serve no purpose to discuss them

all, but a sampling will aid discussion. Preparation, appellate counsel argues, was deficient. As to a Ford pickup truck involved in the case, trial counsel failed to call four witnesses (one of whom was an associate of trial counsel) who could have supplied testimony helpful to the defense. An expert on paints should have been called. Counsel failed to press several discovery motions he had made. Counsel failed to inspect the vehicles which the Commonwealth claimed contained stolen parts. He did not interview the alleged victims. Counsel did not take steps to recover business records which McGann said public authorities had seized.

Invariably the lawyer who refights a campaign on the written record finds ways to fight it better. Indeed, it must be a smug lawyer who, upon completing a trial or an argument, does not reflect ruefully on what should have been said or done. The purpose of the right to counsel afforded by the Sixth Amendment to the United States Constitution and by art. 12 of the Declaration of Rights of the Massachusetts Constitution is, however, something less than a guarantee of a perfect defense; rather it is to insure a fair trial. *Strickland* v. *Washington,* 466 U.S. 668, 686, reh'g denied, 467 U.S. 1267 (1984). *Commonwealth* v. *Howell,* 394 Mass. 654, 657 (1985). Thus, counsel's failings must be so grave, so fundamental, that "the trial cannot be relied on as having produced a just result." *Strickland* v. *Washington,* 466 U.S. at 686. In evaluating trial counsel's performance, judicial scrutiny must be deferential. *Id.* at 689. If the test were whether some step or omission of counsel might have affected the outcome, scarcely any conviction would avoid retrial. *Id.* at 690. Compare *United States* v. *Bosch,* 584 F.2d 1113, 1121-1123 (1st Cir. 1978). Conduct which falls "measurably below that which might be expected from an ordinary fallible lawyer," *Commonwealth* v. *Saferian,* 366 Mass. 89, 96 (1974), implies either lack of preparation or manifestly unreasonable judgment, *Commonwealth* v. *Adams,* 374 Mass. 722, 728 (1978), with resultant prejudice, *Commonwealth* v. *Sellon,* 380 Mass. 220, 223 (1980), including, generally, the loss of an otherwise available and substantial

ground of defense. *Commonwealth* v. *Hamm,* 19 Mass. App. Ct. 72, 76 (1984).

As we read the transcript, trial counsel mounted a reasonably prepared, aggressive, and adroit defense. His cross-examinations displayed command of salient facts in the case and study of prior testimony and statements by prosecution witnesses. We do not fault trial counsel on his election to emphasize weaknesses in the testimony of witnesses who identified car parts they had not seen for years, rather than pitching his closing speech on the defendant's lack of knowledge that those parts were stolen. Once the jury believed that parts in more than one reconstructed vehicle were stolen, it would have demanded a high order of credulity from the jurors to persuade them that the defendant had no knowledge of the origin of those parts. The defendant says his trial counsel, in connection with the identification of stolen car parts by owner witnesses, should have demanded a charge which elaborated the hazards of identification and potential for good faith error as set forth in the appendix to *Commonwealth* v. *Rodriguez,* 378 Mass. 296, 310-311 (1979). In charging the jury, the judge touched on the possibility of mistake by witnesses and, while elaboration on the subject of good faith error by witnesses would have done the defense no harm, we harbor considerable skepticism that such an instruction would have altered the outcome. Certainly, we do not think that failure to ask for a *Rodriguez* instruction in a situation where *Rodriguez* would not spring to mind — the identification dealt not with people, as in *Rodriguez,* but with car parts — constitutes ineffective representation.

2. *Refusal to hold evidentiary hearing on defendant's rule 30 motion.* Whether to hold a hearing on a motion for postconviction relief or to consider it solely on the basis of affidavits and other supporting material is a decision which rests in the sound discretion of the judge, based on a determination whether the motion and affidavits raise a substantial issue. Mass.R. Crim.P. 30(c)(3), 378 Mass. 901 (1979). *Commonwealth* v. *Stewart,* 383 Mass. 253, 257 (1981). *Commonwealth* v.

*Saarela,* 15 Mass. App. Ct. 403, 406 (1983). *Commonwealth* v. *Nicholson, ante* 9, 11 (1985). The issues raised in the rule 30 motion are very much the same as those argued on direct appeal. These issues lent themselves particularly to presentation in documentary form. Successor counsel conscientiously offered a voluminous compilation of supporting material. That material, coupled with a grasp of the case which the judge had obtained from presiding at trial, provided an adequate basis from which the judge could conclude, as he did, that there was no substantial issue which required fleshing out through oral testimony.

3. *Severance.* Before trial, and again on the eve of trial, the defendant moved unsuccessfully for a separate trial of each indictment. Concededly, the crimes charged took place at separate times. They did, however, share common elements of proof, notably the source of the wrecks and a modus operandi. See *Commonwealth* v. *Hoppin,* 387 Mass. 25, 32-33 (1982); *Commonwealth* v. *King,* 387 Mass. 464, 471 (1982), and cases there cited; *Commonwealth* v. *Kenneally,* 10 Mass. App. Ct. 162, 180 (1980), *S.C.,* 383 Mass. 269, cert. denied, 454 U.S. 849 (1981). There were also common witnesses: Benjamin McClaren, who sold the wrecks, Trooper Rand, and F.B.I. Special Agent Ryall. *Commonwealth* v. *Hoppin, supra* at 32-33. Inevitably there is spillover from the proof of one indictment to the other, but that may be appropriate when a defendant is engaged in offenses of a common character; where the defendant is, so to speak, in the business of committing a kind of crime. See generally Smith, Criminal Practice and Procedure § 1056 (2d ed. 1983). In this case one cannot but observe that the "seepage effect" from one indictment to another must have been to some degree diluted because the jury acquitted the defendant on two of the five indictments. The joinder of the indictments for trial was consistent with the authority conferred in Mass.R.Crim.P. 9(a), 378 Mass. 859 (1979), in the case of related offenses. Contrast *Commonwealth* v. *Blow,* 362 Mass. 196, 200-201 (1972).

4. *Failure to suppress evidence.* Several witnesses identified as stolen from them parts of automobiles recovered from a search of McGann's place of business in New Hampshire. There was an unsuccessful effort at trial to suppress evidence flowing from that search.

(a) *Probable cause for the search warrant.* The affidavit made by a deputy sheriff of Cheshire County, New Hampshire, to an issuing magistrate of the Keene, New Hampshire, District Court stated that he was investigating a stolen vehicle and vehicle parts ring and spelled out in detail not only vehicles, equipment and parts for which the sheriff wished to search but stated with considerable precision where on the defendant's property those items had been seen by the informant. Even if we read out of the affidavit certain paragraphs about which a judge of the Superior Court of New Hampshire later expressed doubt, there remained sufficiently detailed information about the circumstances underlying the informant's tip, as well as information about the reliability of his previous tips in leading to seizure of stolen parts sold by McGann, to justify issuing the warrant. See *Commonwealth* v. *Upton,* 394 Mass. 363, 369-377 (1985), which restored to grace *Aguilar* v. *Texas,* 378 U.S. 108, 113-115 (1964), and *Spinelli* v. *United States,* 393 U.S. 410, 413-418 (1969). The standard for evaluating probable cause under art. 14 of the Declaration of Rights is, thus, more strict than that demanded by the Fourth Amendment as construed in *Illinois* v. *Gates,* 462 U.S. 213 (1983).

(b) *Vagueness of the warrant.* By no means were the descriptions of the items to be seized too vague. Some were identified by serial number, VIN, or color. The request for "[r]ecords of business transactions, vehicle titles, inventory and disposition records of Ashuelot Auto Sales, Inc., and Michael B. and Mary McGann" was sufficiently specific and related to the object of the investigation. The same may be said of the request for frames, cabs and bodies, doors, engines, transmissions, and dash assemblies "with altered, changed, defaced, or missing [VINs]." See *Commonwealth* v. *Kenneally,* 383 Mass. at 270 ("All records and papers of the Yankee Insurance Agency"). Contrast *Commonwealth* v. *Accaputo,* 380 Mass.

435, 443-445 (1980) (no description at all of items to be seized); *In re Application of Lafayette Academy, Inc.,* 610 F.2d 1, 3-4 (1st Cir. 1979) (warrant framed to allow seizure of almost every sort of book or paper at the premises identified in the warrant).

(c) *Deviations in return from items specified in the warrant.* Without deciding whether any items listed in the return were grossly different from items described in the warrant, it is sufficient to dispose of the defendant's argument on this score by observing that no nonconforming items or photographs of them were offered in evidence by the prosecution.

5. *Prosecution's failure to comply with pretrial discovery agreement.* In a pretrial conference report the Commonwealth had undertaken to furnish the defense with statements of persons. Kenneth Southworth, the original owner of a Ford pickup truck involved in one of the indictments, had prepared — and furnished to the prosecution — a diagram and a list which noted identifying characteristics of his truck. When Southworth exhausted his memory while on the stand, the prosecutor used the diagram and list to refresh it. On cross-examination, defense counsel established that the list and diagram had been made before Southworth looked at some vehicles at the request of the police. Thereupon defense counsel moved for a mistrial because he had not received the sketch and list from the prosecution for study. For purposes of Mass.R.Crim.P. 14(a)(2), 378 Mass. 874 (1979), a list or sketch may well be a sufficiently formal presentation of information to qualify as a "statement" for purposes of the rule. See Smith, *supra* § 1804. Cf. *Goldberg* v. *United States,* 425 U.S. 94, 100-101, 109-110 (1976); *Commonwealth* v. *Lewinski,* 367 Mass. 889, 902-903 (1975). Rather than grappling with whether the drastic remedy of a mistrial was required, the judge astutely called a recess to permit the defense to assess whether it had been harmed by belated awareness of the list and sketch. When trial resumed, defense counsel no longer pressed the motion for a mistrial and used the list in connection with a searching cross-examination of Southworth. Moreover, the judge gave defense counsel a chance to recall Southworth should investigation develop

a basis for further examination of him. Counsel did not avail himself of the opportunity. When undisclosed evidence surfaces at trial, unless it is virtually destructive of the defendant's case or strongly supportive of innocence, the preferred course of action is just such a provision of additional time for investigative efforts, rather than declaration of a mistrial. *Commonwealth* v. *Baldwin,* 385 Mass. 165, 176-177 (1982). Compare, Smith, *supra* § 1416.

6. *Sufficiency of evidence of scienter.* Evidence tending to prove that a defendant knew goods received by him were stolen is, in the nature of the crime, likely to be circumstantial. See *Commonwealth* v. *Dellamano,* 393 Mass. 132, 138 (1984). As to the indictments against McGann, the jury were able to infer that: shortly after McGann bought a wreck from McClaren, a truck of similar make and vintage was stolen; purchasers from McGann bought operating vehicles which contained stolen parts; a stolen left rear quarter of a car was found on McGann's property; an F.B.I. agent saw a red truck cab on McGann's premises from which the VIN had been removed; in the cab were registration certificates bearing a VIN which appeared on a truck sold by McGann. The combination of stolen parts, the evidence of grafting of the VIN's, and the defendant's relatively scanty records of where he acquired parts was sufficient to enable a rational jury to find beyond a reasonable doubt that the defendant knew that stolen parts were incorporated into the three vehicles connected with the three indictments on which the jury found him guilty of the offenses charged. Cf. *Commonwealth* v. *Saia,* 18 Mass. App. Ct. 762, 766, appendix, par. 2 (1984).

7. *The judge's instructions.* Defense counsel made no objections to the judge's instructions. In any event, the criticism levelled at the charge on appeal, which we consider only on a substantial miscarriage of justice standard, is without merit. The judge charged the jury abundantly and repeatedly that they must be convinced beyond a reasonable doubt that the defendant knew he possessed goods which were stolen. He described the circumstances the jury might consider: "the price, if any, that he [the defendant] paid for the goods; the circumstances under

which he bought or otherwise acquired possession of the goods; the type of person from whom he purchased or otherwise received or acquired possession of the goods; the location and circumstances surrounding the storage and/or concealment of the goods." See *Commonwealth* v. *Burns,* 388 Mass. 178, 183 n.11 (1983).

In view of the basis which the judge employed for sentencing (see part 9 of this opinion, *infra*), it was inconsequential that he omitted from the instruction whether the value of the stolen goods as to each indictment exceeded one hundred dollars. See G. L. c. 266, § 60.

8. *Weight of the evidence.* In his motion for postconviction relief, the defendant argued that the verdicts on two of the indictments were against the weight of the evidence. His principal basis as to indictment no. 82-100598 is that there was evidence that he owned the Ford pickup alleged to have stolen parts long before Southworth's 1978 Ford pickup was stolen. As to indictment no. 82-100601, the defendant relies primarily on an apparent determination by an inspector of the Registry of Motor Vehicles that the vehicle in question, a Chevrolet Blazer, did not contain parts stolen from one Bercume, who had testified for the prosecution that it did. The trial judge denied the motion, and the occasions on which we would set aside such a disposition are exceedingly rare. *Commonwealth* v. *Woods,* 382 Mass. 1, 8 (1980). *Woods* was one of those cases because the evidence which cast grave doubt on the justness of the verdict was documentary, namely a prison log which placed the defendant in that case in prison at the very time when he allegedly committed rape in downtown Boston. Nothing the defendant offers is as conclusively exculpatory. Much of the evidence here depended upon the credibility of witnesses and the piecing together of a great many fragments of evidence. The opinion of the judge who heard all the evidence becomes, in such a case, highly significant. *Commonwealth* v. *Woods,* 382 Mass. at 8-9. We think the judge acted within his discretion in concluding that the verdicts were not against the weight of the evidence.

9. *Sentencing as a common receiver.* It was open to the trial judge, after the jury returned three guilty verdicts, to sentence the defendant as a common receiver of stolen goods under G. L. c. 266, § 62.[1] By reason of the repetition of the use of "whoever" as a subject for the second clause of § 62, we do not read the statute as requiring a prior conviction of receiving stolen goods, as well as conviction "at the same sitting of the court of three or more distinct acts of buying, receiving or aiding in the concealment of money, goods or property stolen or embezzled as aforesaid." See *Commonwealth* v. *Santucci,* 13 Mass. App. Ct. 933, 934 (1982). The sentence which the judge imposed — not less than nine nor more than ten years at M.C.I., Walpole (Cedar Junction) — was severe but within the statutory maximum. There is no suggestion of reprisal or vengefulness on the part of the judge, or of any penalty for standing trial. See *Commonwealth* v. *Joseph,* 11 Mass. App. Ct. 879, 881-882 (1981). Nothing appears to have motivated the judge other than a concern that the crime was serious.

*Judgments affirmed.*

APPENDIX.

(1) Indictment No. 100598 — Green Ford pickup truck.

    04/09/79:     McGann bought wrecked 1979 Ford pickup truck from McClaren's Auto Salvage for $838.
                     Color, green.

    09/17/80:     1978 Ford pickup truck stolen from Kenneth N. Southworth.

---

[1] General Laws c. 266, § 62, reads: "Whoever is convicted of buying, receiving or aiding in the concealment of stolen or embezzled property, knowing it to have been stolen or embezzled, having been before convicted of the like offence, and whoever is convicted at the same sitting of the court of three or more distinct acts of buying, receiving or aiding in the concealment of money, goods or property stolen or embezzled as aforesaid, shall be adjudged a common receiver of stolen or embezzled goods and shall be punished by imprisonment in the state prison for not more than ten years."

12/11/80:   McGann sells 1979 green Ford pickup truck to Ronald
Chestna for $4,200.

05/28/82:   Southworth identifies parts of Chestna truck as having
various characteristics and modifications which South-
worth had listed, in advance of inspection, as pertaining
to his stolen truck.

(2) Indictment No. 100601 — Green Chevrolet Blazer.

06/15/79:   McGann bought wrecked 1979 Chevrolet Blazer from
McClaren's Auto Salvage for $1,265. This vehicle had
VIN CKU 189F115794.
Color, green.

06/24/79:   Black Chevrolet Blazer stolen from Francis Bercume.

08/31/79:   Philip Seenstra d/b/a Village Automotive buys 1979
Blazer from McGann for $5,300. VIN CKU 189F115794.

08/31/79:   Seenstra sells Blazer to Frank Santa Maria.
(same day)

03/24/82:   Bercume identifies as his the body of the vehicle owned
by Santa Maria.

(3) Indictment No. 100602 — Chevrolet pickup truck.

03/24/80:   McGann bought damaged 1978 Chevrolet pickup truck
from McClaren's Auto Salvage for $1,478.

06/04/80:   1976 Chevrolet pickup truck stolen from Walter Giard.
Color, burnt orange.

12/04/80:   McGann sells 1978 Chevrolet pickup truck to Weirs
Motor Sales in Arundel, Maine, through Concord Auto
Auction in Acton, Massachusetts.
Sales price $3,600.

12/04/80:   Weirs Motor Sales to Melody Motors.
(same day)  Sales price $4,435.

12/08/80:   Melody Motors makes sale to James Schmidt.

08/04/82:   Giard identifies as his the cab of Schmidt's truck.