## COMMONWEALTH vs. JOSEPH E. DESFONDS.

No. 89-P-1156.

Middlesex. November 22, 1991. - March 26, 1992.

Present: KASS, GILLERMAN, & LAURENCE, JJ.

*Constitutional Law*, Assistance of counsel, Waiver of constitutional rights. *Waiver. Attorney at Law*, Conflict of interest. *Practice, Criminal*, New trial.

A judge's pretrial colloquy with a criminal defendant was sufficient to establish that he intelligently and voluntarily waived his constitutional right to counsel free of any conflict of interest. [313-316]

Ineffectiveness of defense counsel in a criminal case was not established by an attorney's failure to interview or summon three prospective witnesses, as suggested by the defendant, where the lack of these individuals' testimony did not deprive the defendant of any substantial ground of defense. [316-317]

The rights of a defendant convicted of murder in the second degree were not jeopardized by his trial counsel's failure to move under Mass.R.Crim.P. 25(b)(2) for a reduction of the verdict. [317-318]

A judge had discretion to consider a motion for a new trial of a criminal case without holding an evidentiary hearing. [318]

INDICTMENT found and returned in the Superior Court Department on January 14, 1987.

The case was tried before *John Paul Sullivan*, J., and a motion for a new trial was considered by him.

*Richard M. Passalacqua (Jonathan M. Feigenbaum* with him) for the defendant.

*Catherine E. Sullivan*, Assistant District Attorney, for the Commonwealth.

KASS, J. Joseph Desfonds was convicted by a jury of the second degree murder of Kenneth Haines, who had been killed with a single rifle shot to the forehead on January 4, 1987. In his appeal, Desfonds claims he was denied the assistance of counsel who was free of conflict of interest and ef-

fective. A further error which the defendant asserts is that he was unlawfully deprived of an evidentiary hearing on his motion for a new trial. We affirm the judgment of conviction and the order denying the motion for a new trial.

Concerning the death of Haines, the jury could have found the following. On the evening of January 3, 1987, Haines and his best friend, Frederick McDermott, visited Desfonds at his apartment in Malden. The three men spent the evening drinking and talking. Sometime around 11:00 P.M., they all left to play pool at a bar on Warren Street in Cambridge, where they had a round of drinks. Shortly after they returned to Desfonds's apartment around midnight, McDermott went home, leaving Haines with Desfonds. Those two continued to drink.

At 4:25 A.M., Desfonds called the Malden police emergency line and told the dispatcher that he had killed someone. When the police arrived, Desfonds led them to the victim's body. Haines was lying on the floor of the kitchen in a pool of blood with a single bullet hole in his forehead, a cigarette clutched in his left hand. A .22 caliber rifle lay to his left. There were traces of gunpowder and the impression of the rifle rim around the entry wound. That wound was consistent with the gun muzzle held directly to the victim's head. The rifle appeared to have been wiped clean of fingerprints.

Desfonds gave the police conflicting explanations about how Haines was shot. He alternately told the police that he had shot Haines and that Haines had shot himself, and, finally (this was the version given by Desfonds at his trial), that while they had struggled over the rifle, it had discharged accidentally.

Earlier, around 3:30 A.M., the victim had called a young woman and pleaded with her to stay on the telephone because somebody was going to kill him but might not if he, . Haines, were on the telephone. Haines's voice was trembling. In the background a voice carried over the telephone saying, "I'm going to kill him. Do you dare me to do it? I'm going to

do it." Haines said into the telephone, "Tell everybody I love them. Tell everybody I said goodbye."

1. *Right to conflict-free counsel.* The defendant hired Mr. Anthony Fredella to defend him. Some years earlier, Mr. Fredella had represented Haines in a murder case which resulted in the conviction of the latter of manslaughter.[1] For some twenty years Mr. Fredella had also performed legal services for McDermott (the third man, it will be recalled) and, indeed, at the time of Desfonds's trial, Mr. Fredella was representing McDermott in an unrelated civil matter. Aware of the relationship between Mr. Fredella and McDermott, whom it proposed to call as a witness, the Commonwealth timely[2] moved for a judicial inquiry as to whether Mr. Fredella should be disqualified. The motion was denied.

What is implicated here is the constitutional right, under the Sixth and Fourteenth Amendments to the United States Constitution or art. 12 of the Declaration of Rights of the Massachusetts Constitution, of a person accused of crime to have a lawyer with undivided loyalties. *Commonwealth* v. *Davis,* 376 Mass. 777, 780-781 (1978). *Commonwealth* v. *Goldman,* 395 Mass. 495, 505, cert. denied, 474 U.S. 906 (1985). See *Glasser* v. *United States,* 315 U.S. 60, 76 (1942). Yet the right to counsel of choice entitles a defendant to waive the right to counsel altogether free of a conflict of interest. *Holloway* v. *Arkansas,* 435 U.S. 475, 483 n.5 (1978). *Commonwealth* v. *Connor,* 381 Mass. 500, 504 (1980). *Commonwealth* v. *Goldman, supra* at 505. *Commonwealth* v. *Jones,* 403 Mass. 279, 287 (1988). Waiver should not, however, be lightly found, *Goldman, supra* at 507, and, indeed, every reasonable presumption is against such a waiver having been made because the right involved is a fun-

---

[1] Indeed, in his account of the death of Haines by gunshot, Desfonds testified that Haines had become ugly with drink and that he, Desfonds, had become fearful of Haines because he knew that Haines had killed a man. That fear, Desfonds related, had induced him to reach for his rifle to threaten Haines and persuade him to go home.

[2] The Commonwealth moved for a hearing on January 20, 1987, and the hearing on the motion was held January 28, 1987. Trial was during the third week of September, 1987.

damental one. *Johnson* v. *Zerbst*, 304 U.S. 458, 464 (1938). *Commonwealth* v. *Cavanaugh*, 371 Mass. 46, 53 (1976).

When conducting a hearing into whether a defendant is intelligently and voluntarily waiving the right to counsel free of conflict, a judge should inquire whether the defendant has received full disclosure of the potential conflict, whether the implications of the conflict have been explained, and whether the defendant has considered the consequences. *Commonwealth* v. *Goldman*, 395 Mass. at 507. The judge should appraise the background, education, experience, and conduct of the defendant in deciding whether the defendant is making an intelligent decision. *Id.* at 508. In questioning Desfonds, the Superior Court judge (he was not the same judge who later presided at the trial) was conscientious about covering the prescribed subject matter, as the portion of stenographic transcript set forth in note 3 shows.[3]

---

[3]THE COURT: Now, are you aware that you have a constitutional right to effective representation by an attorney with undivided loyalties - that is, a lawyer who is free from any conflict of interest and whose commitment is solely to you?

MR. DESFONDS: Yes, Your Honor.

THE COURT: Are you aware that there is a potential conflict of interest in this particular case that stems from the fact that your attorney Mr. Fredella currently represents Fred McDermott, a witness that the Commonwealth expects to call?

MR. DESFONDS: Yes, Your Honor.

THE COURT: Have you discussed with Mr. Fredella this potential conflict of interest in his continued representation of you?

MR. DESFONDS: Yes.

THE COURT: . . . Have you discussed this matter with any other lawyer?

MR. DESFONDS: No, Your Honor.

THE COURT: Are you aware that I can arrange for you to obtain the advice of independent counsel before you decide whether or not you want to waive your right to an attorney with potentially divided loyalties?

MR. DESFONDS: Yes, Your Honor.

THE COURT: Can you tell me, Mr. Desfonds, how old are you?

MR. DESFONDS: 61.

THE COURT: And did you go — did you have any formal education?

MR. DESFONDS: No, just high school.

THE COURT: So you graduated——

MR. DESFONDS: No, I didn't finish, no.

THE COURT: You went *to* high school?

MR. DESFONDS: Yes.

Form, as well as substance, is of significance in this sort of inquiry. It is better for the judge to question the defendant in

THE COURT: And what grade did you conclude?

MR. DESFONDS: 10th.

THE COURT: All right. And have you been working during your adult life?

MR. DESFONDS: Yes.

THE COURT: And what kind of work did you do?

MR. DESFONDS: Finish carpenter.

THE COURT: Now, do you understand the charges that have been made against you?

MR. DESFONDS: Yes, Your Honor.

THE COURT: And what are they?

MR. DESFONDS: Murder — Murder One, I think.

THE COURT: Do you understand that your Attorney Mr. Fredella has known Fred McDermott for some twenty, twenty-five years?

MR. DESFONDS: Yes, Your Honor.

THE COURT: And do you understand that Attorney Fredella has represented members of the McDermott family over the past twenty years and continues to represent some of those members?

MR. DESFONDS: Yes, Your Honor.

THE COURT: Now, are you aware that your attorney is currently representing Mr. McDermott in an unrelated civil case involving some automobile?

MR. DESFONDS: Yes, Your Honor.

THE COURT: Are you aware that Attorney Fredella has represented Kenneth Haynes [*sic*], the victim in this case, when Mr. Haynes was tried and convicted of manslaughter in Suffolk County in 1982?

MR. DESFONDS: Yes, Your Honor.

THE COURT: And do you understand that the potential dangers of the representation of Mr. Fredella is that the testimony of Fred McDermott could be significant to the Commonwealth's case against you since he was allegedly the last person to see either yourself or the victim prior to the victim's death?

MR. DESFONDS: Yes, Your Honor.

THE COURT: And also that if Mr. McDermott testifies, a potential conflict of interest may arise between your attorney's financial interest in maintaining a good relationship with his client, Mr. McDermott, and not antagonizing Mr. McDermott by vigorous cross examination that's designed to discredit and embarrass him, and that that could create a potential conflict or a real conflict?

MR. DESFONDS: I understand.

THE COURT: And as I said, you understand that you have a right to effective and conflict free counsel to represent you in these matters?

MR. DESFONDS: Yes.

THE COURT: Realizing what the problem is with this potential conflict, both with respect to the representation of Mr. Fredella currently of Fred McDermott and also his past representation of the victim Kenneth Haynes

a manner which evokes narrative responses, rather than a series of "yes" or "no" answers. *Id.* at 507. *United States* v. *Garcia*, 517 F.2d 272, 278 (5th Cir. 1975). Absent from the colloquy between the judge and Desfonds is a question such as: "Well, why do you want Mr. Fredella to represent you when he has this potential conflict?" Such a question probes a defendant's mind more revealingly.

If short of what we might wish for in an interrogation into whether there has been an intelligent and voluntary waiver of the right to conflict-free counsel, the inquiry by the judge was, nonetheless, satisfactory. A substantially similar set of questions was thought, in *Commonwealth* v. *Jones*, 403 Mass. at 287, to be acceptably probing and thorough. Parenthetically, a reading of Mr. Fredella's cross-examination of McDermott does not suggest the lawyer felt constrained. On the contrary, Mr. Fredella's knowledge of the friendship among Desfonds, Haines, and McDermott, and the apparent lack of hostility or apprehensiveness of McDermott as a witness towards Mr. Fredella, produced a cross-examination more helpful than harmful to the defendant.

2. *Claimed ineffective assistance of counsel.* There were three witnesses whom the defendant says he had directed Mr. Fredella to interview and call to testify, and that Mr. Fredella, mistakenly, neglected summoning them. Desfonds also faults Mr. Fredella for failing to make a posttrial motion to reduce the verdict to manslaughter. We do not think that any of these asserted missteps fell measurably below what might have been expected from an ordinarily fallible lawyer, *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974), nor that the defendant was deprived of an available and substantial defense. *Commonwealth* v. *White*, 409 Mass. 266, 272 (1991). See generally *Commonwealth* v. *McGann*, 20 Mass. App. Ct. 59, 60-62 (1985).

---

[*sic*], is it still your wish to have Mr. Fredella represent you in these matters?

MR. DESFONDS: Yes, Your Honor.

THE COURT: Have you been pressured in any way in having him continue?

MR. DESFONDS: No, Your Honor.

(a) Rocco DiMaggio said in a posttrial affidavit that he had received a telephone call from Desfonds after the shooting but before Desfonds called the police. He said Desfonds sounded severely drunk and that he knew Desfonds to be a sloppy, rather than a violent or aggressive, drunk. Except to confirm that Desfonds was intoxicated, DiMaggio's purported contribution to the defense is doubtful. Desfonds had mentioned calling his sister before calling the police, but not that he had called DiMaggio. To that degree, DiMaggio's information undermined Desfonds's testimony. Desfonds had also testified that the crisis with Haines had served to sober him up just before the shooting and that he, therefore, remembered the circumstances of the shooting "perfectly." The utility of DiMaggio's testimony to the defense ranges from very marginally helpful to potentially harmful; its omission did not deprive Desfonds of a substantial defense.

(b) Charles DeVille,[4] through posttrial affidavit, said he would have testified that he knew Haines to be a "bad drunk" who became abusive when intoxicated. The jury may be taken to have received sufficient evidence of that aspect of Haines's character when McDermott testified that Haines had once stabbed a man thirty-seven times while drunk on hard liquor. A former woman friend of Haines also testified to his tendency to anger when he drank hard liquor and that he had modulated his drinking because he feared what he might do while drunk. Desfonds had testified that Haines had told him of how he, while drunk, had killed a man by stabbing. The ground for Desfonds's self-defense posture was adequately laid without what DeVille had to offer.

(c) Such information as Janice Ventura had to offer, that the defendant was shaking and cold because of "the booze" when she visited him at the police station several hours after the shooting, did not advance the defense.

(d) Perhaps Mr. Fredella ought to have taken a stab at a motion under Mass.R.Crim.P. 25(b)(2), 378 Mass. 896 (1979), to reduce the verdict returned to the lesser included

---

[4]The typed portion of the affidavit gives the surname as Devilla, but the handwritten signature reads DeVille and we take the latter to be correct.

offense of manslaughter. Such a motion may be brought without time limit, however, *Commonwealth* v. *Keough*, 385 Mass. 314, 318 (1982), and could have been pursued by successor counsel. The right of the defendant in this regard was not jeopardized.

3. *Evidentiary hearing on new trial motion.* The point is governed by *Commonwealth* v. *Stewart*, 383 Mass. 253, 257 (1981). The judge's decision to decide the motion for a new trial on the basis of the affidavits submitted on behalf of the defendant was entirely within the discretion of the judge.

*Judgment affirmed.*
*Order denying motion for*
*new trial affirmed.*