COMMONWEALTH *vs.* TODD CARLOS. No. 94-P-329. March 3, 1995. *Controlled Substances. Practice, Criminal*, Required finding. Assistance of counsel.

Convicted of possession of cocaine with intent to distribute it (G. L. c. 94C, § 32A[c]), the defendant, Todd Carlos, claims error in (1) the denial of his motion for a required finding of not guilty and (2) mistakes by his defense lawyer at trial so egregious as to deprive him of effective assistance of counsel. We affirm.

1. *Required finding of not guilty.* When police officers, acting under a search warrant, seized seven bags of crack cocaine and items of drug paraphernalia from an apartment at 282 Bradford Street, Pittsfield, none was on the person of Carlos. Indeed, he was not at the apartment while the search was conducted. The question is whether, from the circumstantial evidence, a jury could find elements of control and power or knowledge by the defendant in relation to the cocaine, coupled with the ability and intention to exercise dominion and control. *Commonwealth* v. *Arias*, 29 Mass. App. Ct. 613, 618-619 (1990), *S.C.*, 410 Mass. 1005 (1991). *Commonwealth* v. *Brown*, 34 Mass. App. Ct. 222, 224-225 (1993). Knowledge of the presence of drugs is by itself not enough to establish possession. *Commonwealth* v. *Caterino*, 31 Mass. App. Ct. 685, 688 (1991). Nor is possession proved by the fact of sharing living quarters. *Commonwealth* v. *Cruz*, 34 Mass. App. Ct. 619, 622 (1993).

Here, the jury were informed that the police investigation of drug dealing from 282 Bradford Street focused in part on a man named Todd. Surveillance in watches of about an hour carried on over a period of time disclosed a pattern of visits by many persons (five to ten people per hour) who went into the apartment under surveillance and quickly emerged, i.e., as if they had made a purchase rather than a social call. The police observed the defendant going to and leaving the apartment from time to time. Among the individuals who popped in and out, the chief investigator,

Detective Terrence Donnelly, recognized known users of crack cocaine. In addition to the bags of cocaine, which were hidden, the police found, as a product of their search, "blowouts" on a kitchen counter. "Blowouts" are the ends of plastic bags and were an indicator to Detective Donnelly, who so described the plastic bags, of repackaging a larger quantity of crack cocaine into a smaller quantity, for purposes of sale. The police also found, on a coffee table, two mirrors, with residue they identified as cocaine, and two razor blades. There was evidence that razor blades are used to break a chunk of crack cocaine into smaller pieces. The police did not find cocaine pipes, pipe stems, or straws, which Donnelly said he would connect with consumption rather than distribution. Also on the coffee table, the police found the defendant's social security card and a prescription for diabetes medication filled out on behalf of Carlos. In the area of the kitchen where the police found the cocaine and the "blowouts," they also found two photographs of Carlos. The jury, in circumstances we will discuss further in part 2 of this opinion, heard evidence that the defendant lived in the apartment and that the police had received information that someone named Todd was selling drugs from the apartment. If we apply the principles of the cases cited in the preceding paragraph, evidence of the following facts was sufficient to take the case to the jury: the mingling of the drugs and paraphernalia with items tied personally to Carlos; the drug traffic at the apartment; the coming and going of Carlos from that apartment; and his sharing of the apartment with but one other person, a woman named Candida Ramos, who was also a focus of the investigation.

2. *Ineffective assistance of counsel.* The core of the Commonwealth's case was in the testimony of Detective Donnelly, who described the investigation, the search, and what the products of the search meant to someone well tutored in the drug trade and culture, as Donnelly described himself to be. Perhaps trial counsel's best strategy would have been to forebear from cross-examining Donnelly and to move for a required finding of not guilty; and if that failed, to use closing argument to poke holes in Donnelly's testimony. That, however, would have taken considerable nerve, would have disappointed the client, and would doubtless have provoked a complaint of ineffective assistance of counsel by successor counsel who took the appeal. In fact, trial counsel chose to cross-examine Donnelly and, in the process, added muscle to the government's case.

First, trial counsel probed Donnelly's testimony that he had seen Carlos on repeated occasions in the area of 282 Bradford Street. That line of questioning exposed Donnelly as quite vague about his sightings. Then trial counsel began to poke at the oddity that the search warrant referred only to "a man named Todd." If, as Donnelly said, he had seen Todd Carlos and knew Todd Carlos, what was the reason for the imprecise and somewhat unusual use of the first name only in the search warrant? The point counsel was trying to score was that the case against Todd Carlos was all guess work. To emphasize that point, defense counsel asked: "But

you could only tell us that somebody named Todd lived there when you applied for the warrant?" The answer from Donnelly was: "Correct; that's the information that I had received from an informant." The jury now knew there was an informant, although it might be supposed the idea was already in the jurors' minds because something would have triggered the police investigation of the activity of Carlos and Ramos in 282 Bradford Street. Counsel also asked Donnelly: "You received information that a man named Todd lived in that apartment?" The answer was "Yes." Counsel's purpose was to suggest that Donnelly was tailoring his testimony after the fact to rope in Carlos. Nonetheless, there was now evidence that Carlos lived in the apartment, a fact which diminished the likelihood of succeeding on a motion for a required finding of not guilty. Still working the vein that there was something fishy about the warrant having mentioned only "a man named Todd" and about Donnelly's entire story, defense counsel asked: "And you had information that someone named Todd was selling drugs in that apartment?" The answer again was in the affirmative, and now the net was drawn tighter because this was direct testimony linking Carlos to drug dealing.

The other examples of ineffective lawyering cited by appellate defense counsel were acts of omission. Counsel failed to object to questions directed at obtaining Donnelly's opinion, as an expert in such matters, whether Carlos possessed the drugs with intent to distribute. To be sure, this trespassed on the ultimate question the jury were to answer, *Commonwealth* v. *Woods*, 419 Mass. 366, 375 (1995), but could easily have been rephrased by asking what was later asked of another witness, whether the products of the search indicated sale or consumption of drugs. Defense counsel was reasonably effective in defanging the detective's opinion testimony by asking: "Detective Donnelly, you feel strongly about it because you made the arrest; is that true?" Donnelly answered, "Yes."

Although trial counsel put some questions that might better not have been asked, failed to object to the question about the ultimate issue in the case, and allowed in some hearsay that would better have been objected to, those missteps do not place his performance in the category of ineffective assistance of counsel. Trial counsel for the defense played the hand he had been dealt, and it was not a strong one. The government's case combined surveillance, the product of a search, evidence that drug distribution had been going on from 282 Bradford Street, and tied the defendant to that apartment in ways that made it most implausible that he was not involved with the traffic. Normal inferences were rammed home by well prepared testimony from the government's two witnesses which tied the tangible evidence to drug dealing. Defense counsel's efforts to taint the credibility of Donnelly, the more important of the two government witnesses, involved risk, and that risk worked out badly. What is clear in hindsight, however, would not necessarily have been so clear in foresight. The test is what an ordinarily fallible lawyer would do. *Stickland* v. *Washington*, 466 U.S.

668, 689, reh'g denied, 467 U.S. 1267 (1984). *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974). *Commonwealth* v. *McGann*, 20 Mass. App. Ct. 59, 61 (1985). Any lawyer combing the record can try the case better. *Ibid.* Even without what defense counsel's examination added to the prosecution case, the evidence was sufficient to resist a motion for a required finding of not guilty. Counsel's errors did not jettison an otherwise available defense. *Commonwealth* v. *Florentino*, 396 Mass. 689, 690 (1986). *Commonwealth* v. *Hamm*, 19 Mass. App. Ct. 72, 76 (1984). In evaluating a lawyer's performance, judicial scrutiny must be deferential. *Strickland* v. *Washington, supra.* It is unlikely that defense counsel's miscues in the trial of the case affected the outcome. We conclude that the record does not bear out the claim of ineffective assistance of counsel.

*Judgment affirmed.*

*Robert H. Scarino* for the defendant.
*Eric Neyman*, Assistant District Attorney, for the Commonwealth.