## Alexander Jones v. The State.

1. **Evidence.** *Of contradictory statements. Foundation therefor. Case in judgment.*

A witness was asked on cross-examination whether he had not at various times made different and contradictory statements to different persons in regard to the matters testified to by him on his examination in chief. *Held,* that it was proper to sustain an objection to such question, because it failed to specify the time, place and persons involved in the supposed contradictions. *Fulton* v: *Hughes,* 63 Miss., 61, cited.

2. **Criminal Practice.** *Evidence of contradictory statements. Communications of accomplice to his attorney, whether privileged.*

B. was appointed to defend J. and L., jointly indicted for murder. On the trial of J., L. appeared as a witness for the State and testified to the guilt of J., and was the only witness who testified to the death of the person alleged to have been killed, stating that he threw the dead body of the man killed into a creek. On cross-examination the witness was asked if he had not stated to B., his counsel, on the day previous, soon after the Court had appointed B. to defend him, that the person alleged to have been killed was not dead when he threw him into the creek. The Court would not permit the question to be answered. *Held,* that this was error. In such case the communication of a client to his attorney is not privileged.

Appeal from the Circuit Court of Chicasaw County.

Hon. L. E. Houston, Judge.

Alexander Jones, Dave Love and George Rowen were jointly indicted for the murder of Dave Wright. When the case was called the defendants asked the court to appoint counsel for

them. Thereupon the court appointed T. J. Buchanan and W. D. Frazee to defend them. A severance was granted Alexander Jones and he was put on trial. Dave Love, amongst others, was examined as a witness for the State. He testified that he went to the house of one Sarah Hill about 12 o'clock on the night of the difficulty; that he saw a man lying on the steps of the house badly hurt; that Alexander Jones demanded to know who he was; that Jones then told him (witness) that he must help carry the man away, and thereupon Jones struck the man on the steps a blow in the head with an axe, and quickly rolled him up in a quilt, and that witness and Rowen carried the dead man to the depot on a plank, put him in a box car, tied some fish bars to the body, and, as the train ran by a creek, threw him in; that the man was dead when the body was thrown in the creek. Witness said, "Don't know who the man was; never saw him before. I was told it was Dave Wright." The body was never recovered, and this witness was the only one who swore positively as to the death of the man who was found at Sarah Hill's door and thrown into the creek, as narrated above. Thereupon the defendant's counsel offered to show that Dave Love had stated to T. J. Buchanan and W. D. Frazee, "the day before this trial, while talking to them after the court had appointed them to defend the three men charged with the crime, that the man they threw in the creek was not dead, and that the way they carried him to the depot was one man on each side and supporting him under the arms, which was refused by the court as a privileged communication."

The defendant's counsel also asked this same witness, Love, if he had not made different statements or confessions to different parties about the killing, and the removal of the man's body. To this there was an objection, on the ground that no predicate had been laid. The objection was sustained. The defendant was convicted, and he appealed from the judgment of the court.

*T. J. Buchanan, Jr.*, and *W. D. Frazee*, for the appellant.

1. It is a rule of law that no witness shall be required to answer any questions that may tend to criminate himself; yet the accomplice, when he enters the witness box with a view of escaping punishment himself by a betrayal of his co-workers in

crime, yields up and leaves that privilege behind him. He con-
tracts to make a full statement—to keep back nothing; although
in doing so he may but confirm his own guilt and infamy. If
he fails to do so in full—if he knowingly keeps back any
portion of the history of the crime he undertakes to narrate, he
forfeits his right to pardon, and may be proceeded against and
convicted upon his own confession, already made. (*Rex* v.
*Rudd*, 1 Cowper, 331; *Com.* v. *Knapp*, 10 Pick., 477; 2 Russell
on C., 958, note *a*.) We think an accomplice who makes him-
self a witness for the people should be required to give a full
and complete statement of all that he and his associates may
have done or said relative to the crime charged, no matter when
or where done, or to whom said. He should be allowed no
privileged communications. These he has voluntarily surren-
dered. The enforcement of such a rule may be the only protec-
tion the party on trial has left—the only means remaining to
him to meet, it may be, the perjury of the criminal upon the
witness stand. 4 Michigan, *Moyer & William Alderman* v. *The
People*, 423.

2. The court erred in not permitting counsel to ask witness
if he had not made different statements to parties at different
times. 57 Miss., *Cannon* v. *State*, 152; 3 Russell on Crimes,
561, note. The question was material; the witness was then
telling about killing and the manner the man was carried off.
The court failed to draw the distinction between asking if he
had not made different statements for the purpose of attacking
its credibility, and not for the purpose of contradiction. If we
were going to contradict, then we should have laid the predicate.

*T. J. Buchanan* also argued the case orally.

*T. M. Miller*, Attorney General for the State.

1. Can a witness be compelled to disclose communications
made by him to his counsel even on cross-examination, with the
view of impeaching his credibility either through his answers or
by calling his counsel.

In the cases cited below to maintain the negative of this
proposition all the reasoning based on conditions of public
policy will be found.

Whatever applies to a party may be conceded to apply to

any other witness, for argument's sake, and still the principle remains.

Wharton in his work on Criminal Evidence, § 499, says "When a party offers himself as a witness it has been held that he may be asked as to his communications to his counsel (*citing Woburn* v. *Henshaw*, 101 Mass., 193), though the better opinion is to the contrary and cites:

*Duttenhofer* v. *The State*, 34 O. St. 91; *Bigler* v. *Reyher*, 43 Ind. 112; *Barker* v. *Kuhn*, 38 Iowa, 395; *Bobo* v. *Bryson*, 21 Ark. 387; *State* v. *White*, 19 Kan. 445; *Shepard* v. *Parker*, 36 N. Y. 517.

In a note to § 237, 1 Gr. on Ev., it is said "moreover the client as well as the lawyer is protected from disclosing such communications," citing *Hughes* v. *Biddvept* 4 Burr. 190, and *Holmes* v. *Brady*, 1 Phil. 476.

Se also *Hemenway* v. *Smith*, 28 Vt. 701.

In *Montgomery* v. *Pickering*, 116 Mass. 229, it was held that even a party by becoming a witness in his own behalf did not lose the right to object to counsel divulging communications.

It is said that this rule of law protecting communications between counsel and client is very ancient, very sacred and universally admitted and approved.

See *Crisler* v. *Garland*, 11 S. & M. 136; *Parkhurst* v. *Mc-Grann*, 2 Coch. 134.

2. The Court did right in sustaining objections to the general questions put to the witness Love, whether he had not made different statements to different persons without naming them or the time or place. There is nothing in the facts or reasoning in the case of *Conner* v. *The State* (relied on) to admit such an inquiry.

If it is proposed to involve a witness in self-contradictions, or lay the foundation for impeaching, the same rule of fairness and candor requires that his attention should be called to time, place and circumstances.

The *Attorney General* also made an oral argument.


ARNOLD, J., delivered the opinion of the Court.

It was right to sustain the objections made to the questions.

propounded to the witness, Dave Love, on cross-examination, as to whether he had not, at various times, made different and contradictory statements, to different persons, in regard to the matters as to which he had testified on his examination in chief, because the time, place and persons involved in the supposed contradictions were not specified in the questions.　1 Greenleaf Ev., Section 462; *Fulton v. Hughes*, 63 Miss., 61.

But the witness should have been allowed and required to answer the question in relation to what he had told his counsel, whether the objection to the same was made by him, or by the Court of its own motion, for him.

The act of an accomplice in testifying for the State, so as to criminate himself with others, is voluntary.　He could not be compelled to do so.　He testifies for the State, under a promise of favor, express or implied, on condition that he will make a full statement and confession in regard to the matter.　His testimony comes in such a questionable shape, that it should, in the interest of truth and justice, be subjected to the severest scrutiny and acted on with the greatest caution.　There is no case in which cross-examination is more desirable or important to test the credit of a witness, than that in which one man is seeking to save his own life or liberty, by swearing away the life or liberty of others.

Communications between a client and his attorney or legal adviser, are privileged from exposure, without reference to whether proceeding are pending or in contemplation, and neither can be required to disclose such communications, unless the client consents. 1 Whart., Ev., Sections 583, 587.　Such privilege is created for the benefit and protection of the client, and if he waives it, there is no ground for such protection.　While the privilege may be waived by the client, it is generally held that he does not do so merely by becoming a witness and testifying in his own behalf.　*Duttenhofer v. The State*, 34 Ohio, 91; *Bigler v. Beyher*, 43 Ind., 112; *Barker v Kuhn*, 38 Iowa, 395; *Bobo v. Bryson*, 21 Ark., 387; *State v. White*, 19 Kan., 445; Whart. Cr. Ev., Sec. 499.

But when one jointly indicted with others, turns States evidence, and attempts to convict others by testimony which also

convicts himself; the rule must be different, and he has no right to claim any privilege concerning any of the facts pertinent to the issue, nor any exemption from the broadest latitude of cross-examination. He thereby waives all privileges against crimi-nating himself and against disclosing communications between himself and his counsel touching the offence charged. Both client and counsel, may in such case, be compelled to disclose such communications. *Alderman* v. *People*, 4 Mich., 414; *Foster* v. *People*, 18 Mich., 266 ; *Hamilton* v. *People*, 29 Mich., 173.

The reason for maintaining such privileges ceases, when one has voluntarily exposed himself by his own testimony, to the very consequences from which it was intended by the privilege to protect him. To preserve such privilege in such case would be worse than vain, for while it could not help the witness, it might, by withholding the only means of contradicting and im-peaching him, operate with the greatest injustice towards the party on trial.

*The judgment is reversed and the cause remanded.*