STATE of Iowa, Appellee,

v.

Davyd Sebastian HOLLINS, Appellant.

No. 54442.

Supreme Court of Iowa.

March 11, 1971.

Oliver O. Over, Jr., Council Bluffs, for appellant.

Richard C. Turner, Atty Gen., Max A. Gors, Asst. Atty. Gen., and Lyle A. Rodenburg, Asst. County Atty., for appellee.

MOORE, Chief Justice.

Defendant, Davyd Sebastian Hollins, was charged, tried, convicted and sentenced for breaking and entering in violation of Code section 708.8 and has appealed. We affirm.

Defendant contends the trial court erred in sustaining the claimed attorney-client privilege asserted by the attorney for an accomplice who had testified and in admitting certain exhibits.

The record contains evidence that around midnight April 13, 1969 Mr. and Mrs. Francis Swolley saw two men across the street from their home standing near the front door of Ben Passer Grocery in Council Bluffs, Iowa. One broke the window, reached in, took several 6-packs of beer, handed some to his companion and both left in an old green or blue Chevrolet. Mr. Swolley telephoned the police a description of the car and the two men both of whom he identified. Drumheller was referred to as a Mexican and defendant as a negro. A few minutes after the break-in the described Chevrolet was seen by police officers driving into a driveway on a side street. As the officers approached the driver, Clifford Drumheller, alighted from the car and three 6-packs of beer were seen "rolling out" the right front door. Defendant occupied the right front seat.

Drumheller testified as a State's witness and described the events of the evening including considerable drinking and the break-in. On cross-examination Drumheller stated he had entered a guilty plea to the charge involving the break-in but had not been sentenced. He was also being held in the county jail under three other charges. He testified he knew of no promises with reference to the break-in charge, he was not testifying because of a fear or different treatment if he did not testify and that he felt he would be treated the same whether he did or did not testify. He had talked with some of his cell mates regarding testifying and when subpoenaed, decided to do so.

On further cross-examination by defendant's trial lawyer, not counsel on this appeal, Drumheller admitted defense counsel had talked with him a few days prior to trial. The record includes:

"Q. Calling your attention to our conversation, which we previously mentioned, did you state to me, at that time, that you feared prosecution for withholding evidence if you did not testify? A. Yea, that's what they told me in the county jail over there. That, if, ah, I didn't—you know—come over here when they give me a subpoena, that they'd get me for withholding evidence, that I was—y'know— somethin' like that, I, that's what they told me over there. The guys—y'know—in over there.

"Q. Did you tell me, at the time of that conversation, that you felt it would go easier on you? A. Ah—well—I don't know. I—I s'pose I thought that way. But—it don't—I don' know—I'm all confused. It's just a mess."

Defendant testified he was in Drumheller's automobile but was asleep and knew nothing of the break-in. Defendant's trial counsel then announced he was calling Drumheller's attorney, Thomas Root, as a witness. A motion in limine was immediately made by the prosecutor and an extended record made in the absence of the jury. The primary question raised and discussed was attorney-client privilege.

Defense counsel stated the sole and only purpose of calling attorney Root was to attack the credibility of Drumheller. His remarks included his knowledge that Root would assert privilege and in counsel's opinion it would be Root's duty to do so. Defense counsel's position was that by testifying about the break-in Drumheller had waived the privilege. A proffer was made and Root asserted the privilege which the trial court sustained. Thus we have defendant's first assigned error.

I. As relevant here Code section 622.10 provides: "No practicing attorney, counselor, * * * who obtains such information by reason of his employment, * * * shall be allowed, in giving testimony, to disclose any confidential communication properly entrusted to him in his professional capacity, and necessary and proper to enable him to discharge the functions of his office according to the usual course of practice or discipline. Such prohibition shall not apply to cases where the party in whose favor the same is made waives the rights conferred."

In Bailey v. Chicago, Burlington & Quincy Railroad Co., Iowa, 179 N.W.2d 560, filed September 2, 1970, supported by many cited authorities, we analyze and discuss the purpose, necessity and importance of the attorney-client privilege. Repetition here is unnecessary. At page 565 we say: "Every client must be accorded benefit of the statutory privilege once established as in this case, unless there is some realistic basis upon which to find absence of confidentiality, or a knowing and voluntary waiver. Any other approach would serve to materially erode the privilege and unduly restrict that free and open rapport between counsel and client so essential to the proper administration of justice."

It is defendant's position that by testifying to the break-in events Drumheller waived the attorney-client privilege. The record is not clear but apparently defendant sought to examine Root concerning conversations with Drumheller. No reference to Mr. Root was made in the testimony given by Drumheller. Therefore no claim is made that impeachment foundation was laid.

Defendant relies heavily on this statement from the Anno. 51 A.L.R.2d 521, 528: "Although there is some authority to the contrary, it has been held or recognized in a number of cases that where an accomplice turns state's evidence and attempts to convict others by testimony which also convicts himself, he thereby waives the privilege against disclosing communications between himself and counsel." The cited prime authorities, the latest of which was decided in 1905, are factually different from the case at bar. In each the client-witness testified regarding confidential communications with his attorney or by his testimony voluntarily exposed himself to a waiver of the attorney-client privilege.

Other cited cases in the annotation and more recent cases hold an accomplice does not by relating the events of the crime waive his attorney-client privilege. In People v. Lynch, N.Y., 1968, 23 N.Y.2d 262, 296 N.Y.S.2d 327, 244 N.E.2d 29, 35, the court says: "Defendant argues, however, that the privilege was waived when Toomer accepted immunity and testified. This would be true if the witness had testified to the content of a prior conversation with his lawyer, thus waiving his right to keep the conversation confidential. But, testimony about an event, even when the witness is protected by immunity, should not be construed as a waiver of the privilege, merely because the subject matter of the testimony may also have been discussed in the privileged communication. The situation should not be confused with the waiver of the privilege against self incrimination by partial disclosure. Defendant's argument, if sustained, would undermine the attorney-client privilege, which should be preserved, especially with respect to a client who occupies the status of a criminal accomplice. Perhaps as valuable as the privilege against self incrimi-

nation is the freedom of confidential communication between lawyer and client." See also Dunn v. Commonwealth, Ky., 1961, 350 S.W.2d 709, 713.

Our review of the record fails to disclose a knowing and voluntary waiver of Drumheller's attorney-client privilege with Mr. Root. The trial court's ruling recognizing and sustaining the asserted privilege was correct.

■ II. Defendant next argues exhibits 1 through 9, being 6-packs of beer, were improperly received in evidence. Objection thereto was made on the basis of insufficient identification and failure of proof in the chain of possession.

Mr. Passer, the store owner, described how 6-packs of several brands of beer were stacked near the front window. His check indicated nine 6-packs had been stolen. He was unable to definitely state those found in Drumheller's old Chevrolet came from his store. Drumheller stated the stolen beer was put in his car and none was consumed before the police officers made the arrests.

Patrolman Edward E. Black as he approached the Chevrolet in the driveway observed three 6-packs "rolled out" of the right front door and defendant then occupied the right front seat. After taking defendant into custody Black put the three 6-packs in the front seat and observed six 6-packs in the back seat. Black summoned a tow truck and the Chevrolet was taken to the police station where Black met it. The beer was in the same position when last seen. Black removed the nine 6-packs, marked each for identification and placed them in the police evidence cabinet. They remained there until Black took them to the court room. He identified each by his markings thereon.

Although the store owner did not clearly identify the nine 6-packs as coming from his store the testimony of Swolley, Drumheller and officer Black is sufficient to support a jury finding they were taken from the store. A like conclusion under similar facts was made in State v. McClelland, Iowa, 1968, 162 N.W.2d 457, 463.

The rule is well established that in passing on the admissibility of properly identified exhibits consisting of solid objects where a break in the chain of custody is shown, the failure to account for undisturbed possession goes to the weight of the evidence rather than its admissibility. State v. Limerick, Iowa, 1969, 169 N.W.2d 538, 541, 542, and citations.

Exhibits 1 through 9 were solid objects, not easily susceptible to undetected alteration. We hold the trial court did not err in admitting them into evidence.

We find no reversible error.

Affirmed.

All Justices concur, except LARSON, J., who takes no part.