**William L. COWELL, Petitioner,**

v.

**Jack DUCKWORTH, Warden of Indiana State Prison, and Attorney General of the State of Indiana, Respondents.**

**No. S 81–93.**

United States District Court,
N. D. Indiana,
South Bend Division.

April 27, 1981.

William L. Cowell, pro se.

Linley E. Pearson, Atty. Gen. of State of Indiana, Indianapolis, Ind., for respondents.

## MEMORANDUM AND ORDER

ALLEN SHARP, District Judge.

Petitioner, William L. Cowell, is a state prisoner confined at the Indiana State Prison at Michigan City, Indiana, who filed this petition pursuant to 28 U.S.C. § 2254. Cowell was tried and convicted on April 30, 1973 in the Lake County Criminal Court of first degree murder and was sentenced to life imprisonment. Cowell appealed his conviction to the Supreme Court of Indiana alleging several issues including the question of whether his confession was voluntary. The Supreme Court of Indiana affirmed the conviction in a published opinion, *Cowell v. State*, Ind., 331 N.E.2d 21 (1975). Cowell subsequently filed a petition for post-conviction relief raising several additional issues, including allegations of ineffectiveness of counsel due to a conflict of interest on the part of the attorney retained by his wife to represent him. The petition was denied by the trial court and this action was upheld on February 23, 1981, by the Supreme Court of Indiana. The transcript of proceedings in the state courts has been filed with this Court and it has been thoroughly reviewed pursuant to *Townsend v. Sain*, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963).

The habeas petition alleges ineffectiveness of counsel, that the psychiatrist who examined him was not qualified to do so, that he was denied due process of law by introduction of his past criminal record, that his confession was not voluntary, and that there were irregularities in the trial proceedings and abuse of discretion by the trial court. Petitioner has properly presented the questions of effectiveness of counsel and voluntariness of his confession to the state courts and has exhausted the remedies available to him in state courts as required by 28 U.S.C. § 2254(b) and *Pitchess v. Davis*, 421 U.S. 482, 95 S.Ct. 1748, 44 L.Ed.2d 317 (1975). Petitioner has not exhausted his state court remedies as to the remaining issues. Therefore, this Court can only address the allegations of ineffective assistance of counsel and the voluntariness of the confession.

William Cowell signed a statement in which he confessed to the murder of William Siebert. That statement was introduced into evidence at trial. (Tr. 879–881). Cowell testified that he had not been informed of his constitutional rights, prior to making the statement, that his requests for an attorney were refused, that he was knocked down and shoved by policemen, and that he was denied treatment for an injured foot until he confessed. (Tr. 579– 587). Three police officers testified that Cowell was given *Miranda* warnings three times prior to signing the waiver and confession (Tr. 604, 607–8, 614–15), that he did not request an attorney and that his foot was treated prior to the time of the written

confession. The trial court overruled Cowell's motion to suppress his waiver and statement. (Tr. 618). The Supreme Court of Indiana held that:

It is the trial judge who weighs conflicting evidence. On appeal we do not disturb a trial court's ruling as to the admissibility of a confession based on conflicting evidence except for abuse of discretion (citations omitted). It was not an abuse of discretion for the trial court to conclude that the confession was voluntary. 331 N.E.2d at 23–24.

■ Where a state court has made a determination, after a hearing on the merits of a factual issue, evidenced by a written finding or opinion federal district courts should rely on those findings of fact unless one of the conditions set forth in 28 U.S.C. § 2254(d) or *Townsend v. Sain, supra,* are met. In this case, none of the exceptions found in § 2254(d) or *Townsend v. Sain* apply. The trial court heard the conflicting testimony of Cowell and the police officers concerning whether Cowell was advised of his constitutional rights and the other conditions surrounding Cowell's statement. United States Code section 2254(d) creates a "presumption of correctness" on behalf of factual determinations made by state courts. Here the trial court made a determination, after a hearing on the merits of a factual issue, that the defendant had been read his *Miranda* rights. This determination is fully supported by the testimony of Officers Hauckman (R. 603–605), Pearson (R. 606–608), and Carroll (R. 614–615). The trial court determined that the confession was voluntary and admissible. There is nothing in the record to justify disturbing this determination. See *Sumner v. Mata,* —— U.S. ——, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981).

Petitioner also alleges that his counsel was ineffective in that at the time of his criminal trial his attorney was representing his wife and daughter, as well as himself, which resulted in a conflict of interest.

■ A criminal defendant is denied his constitutional right to effective assistance of counsel when his trial attorney, without his knowledge and consent, concurrently represents a prosecution witness who gives damaging testimony and whose interests are adverse to his. *Stephens v. United States,* 595 F.2d 1066 (5th Cir. 1979); *Castillo v. Estelle,* 504 F.2d 1243 (5th Cir. 1974); *United States ex rel. Williamson v. LaVallee,* 282 F.Supp. 968 (E.D.N.Y.1968). However

The mere fact of dual representation standing alone, does not create a Sixth Amendment violation. A conflict of interest must first be established. *United States ex rel. Williamson v. LaVallee, supra,* at 974.

■ The Sixth Amendment guarantees each criminal defendant the right to the effective assistance of counsel. *Argersinger v. Hamlin,* 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972). The courts have long recognized that this right may be impaired when counsel represents multiple defendants in the same case. *Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942). Nevertheless, multiple representation without a showing of conflict of interest is not in itself a violation of the Sixth Amendment. *United States v. Mandell,* 525 F.2d 671, 677 (7th Cir. 1975), *cert. den.,* 423 U.S. 1049, 96 S.Ct. 774, 46 L.Ed.2d 637 (1976). The typical conflict of interest claim arises when one attorney represents multiple defendants. See, e. g., *Holloway v. Arkansas,* 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978). Here the alleged conflict arose out of defense counsel's representation of the defendant's wife, Charlotte Cowell, and daughter who Mrs. Cowell feared might be culpable as an accessory after the fact for transporting and harboring Cowell.

Charlotte Siebert (Seberg in post-conviction record) testified she was presently the ex-wife of Appellant Cowell and that at the time of William Siebert's death on August 23, 1972, she had been the latter's ex-wife, having been married to Appellant Cowell at the time (R. 81). After Siebert's death, she had been arrested for an unpaid bill at a Ramada Inn (R. 83). Charlotte Siebert continued to testify that she had retained an

attorney named Don Levinson, who worked with Max Cohen, to represent Appellant Cowell at trial (R. 84). The same attorneys also represented Charlotte in: obtaining the life insurance proceeds resulting from William Siebert's death of which she was beneficiary; dealing with the decedent's estate in terms of buying a house back; representing her in connection with the Ramada Inn charge; and in "looking after" her children (R. 84, 85). The latter were apparently involved in the killing after the fact and there had been some indication they might also be charged (R. 86–88). There was also some discussion with Attorney Levinson and Mrs. Siebert that there was a strong possibility Appellant Cowell might receive a sentence of two to fourteen years and this was communicated to Appellant by Mrs. Siebert (R. 89–90). The charge against Mrs. Siebert involving the Ramada Inn was subsequently dismissed and her children were never charged as accessories (R. 90, 91). Mrs. Siebert was apparently told the night Appellant was arrested that if she signed statements, she would not be charged with the Ramada Inn incident and her children would not become involved (R. 91). Prior to Appellant's trial Mrs. Siebert had been told by Attorney Levinson ". . . to not worry about it, they'd take care of it, just answer whatever questions would come up." (R. 91). Mrs. Siebert then testified as to the present whereabouts of some of her children (R. 93, 96). Mrs. Siebert then testified that at the time of the killing, William Siebert's and her Will had been the same and that she had written it, but did not know whether it had been changed after the divorce (R. 96). Mrs. Siebert concluded her testimony on direct examination by stating that she and Appellant Cowell had been married for over two years and that he had always been protective of her (R. 97).

On cross-examination Mrs. Siebert testified she and her children had been subpoenaed by the prosecutor to testify at Petitioner's trial and that her attorneys had told her not to worry but to go ahead and answer the questions (R. 98). On the night of Petitioner's arrest, she and her children

had given statements to the police (R. 98). A prosecuting attorney had made representations prior to trial that everything would be taken care of, not to worry and that her lawyer would take care of it (R. 101, 103). Mrs. Siebert further testified on cross-examination that she had retained Attorneys Cohen and Levinson to represent her in the civil matters approximately a week after she had retained them to represent Petitioner (R. 103). The civil matters were taken care of prior to Petitioner's trial, while the Ramada Inn matter was not disposed of until a couple of years later (R. 103, 104).

At the trial Petitioner's then wife and her relatives were called as witnesses for the state and gave testimony generally implicating themselves as accessories after the fact to the killing (Tr. 455–459; Tr. 470–476; Tr. 477–491; Tr. 503–519).

However, the record establishes that Mrs. Cowell's testimony, as a prosecution witness, did not implicate Cowell in any way. (Tr. 455–459). Mrs. Cowell later testified as a defense witness and gave testimony implicating Cowell, but at the same time she described defendant's mental instability which supported his insanity defense. (Tr. 648–709). The daughter's testimony did implicate Cowell (Tr. 503–519) but, as the Supreme Court of Indiana noted in its opinion, "defendant at no time denied that he had committed the homicide. Rather having made a confession to the police and admitting guilt on the stand his defense was that of insanity." (Cowell v. State, opinion of state court on petition for rehearing at page 22). On cross-examination, Cowell's attorney elicited from the daughter that she thought, at the time of the offense, that Cowell was "sick" and "disturbed." (Tr. 513–515).

█ The Seventh Circuit Court of Appeals recently addressed this issue in a very similar factual setting in *Ross v. Heyne*, 638 F.2d 979 (7th Cir. 1980). There the court stated as follows:

"In order to establish a violation of the Sixth Amendment, a defendant who

raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance. *Cuyler v. Sullivan*, 446 U.S. [335] at 348 [100 S.Ct. 1708 at 1718, 64 L.Ed.2d 333]. *An actual conflict would arise where defense counsel is unable to cross-examine a prosecution witness effectively because the attorney also represented the witness.* *United States v. Mavrick*, 601 F.2d 921, 931 (7th Cir. 1979). The problem that arises when one attorney represents both the defendant and the prosecution witness is that the attorney may have privileged information obtained from the witness that is relevant to cross-examination, but which he refuses to use for fear of breaching his ethical obligation to maintain the confidences of his client. *See* Code of Professional Responsibility, Can 4 & DR 4–101(B)(2). "The more difficult problem which may arise is the danger that counsel may overcompensate and fail to cross-examine fully for fear of misusing his confidential information." *United States v. Jeffers*, 520 F.2d 1256, 1265 (7th Cir. 1975), *cert. denied*, 423 U.S. 1066 [96 S.Ct. 805, 46 L.Ed.2d 656] (1976)." *Id.* at 983. (emphasis added)

Thus Cowell's lawyer had an actual conflict of interest between his representation of the accused and two of the prosecution witnesses. *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), established that unconstitutional multiple representation is never harmless error. Further, the court refused "to indulge in nice calculations as to the amount of prejudice" attributable to the conflict because the conflict itself demonstrated a denial of "the right to have the effective assistance of counsel." *Id.*, 315 U.S. at 76, 62 S.Ct. at 467.

█ Therefore, the law of this circuit requires this Court to grant the petitioner's writ of habeas corpus in view of the clear

violation of Cowell's Sixth Amendment rights. The writ of habeas corpus will now issue unless the State should elect to retry Cowell within 180 days. SO ORDERED.