COMMONWEALTH *vs.* LAWRENCE GOLDMAN.

Norfolk. April 2, 1985. — July 29, 1985.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, NOLAN, & LYNCH, JJ.

*Attorney at Law*, Disqualification, Conflict of interest. *Evidence*, Privileged communication. *Waiver. Conflict of Interest. Practice, Criminal*, Assistance of counsel.

Discussion of the long-standing conflict in the Massachusetts case law on the issue whether a witness waives his attorney-client privilege by testifying at trial as to events which have been a topic of a privileged communication. [498-499]

A prosecution witness at a criminal trial did not waive his attorney-client privilege in regard to confidential communications previously made to the defendant's attorney concerning certain events, now the subject matter of the trial, when that witness took the stand and gave testimony as to those events, but specifically refused to waive the attorney-client privilege as to the confidential communications with the attorney; nor, on the record of these proceedings, did justice require that the privilege be overridden. [499-502]

An attorney, representing the defendant at a criminal trial, to whom a witness for the Commonwealth previously had made confidential communications, was required to withdraw because of the conflict of interest which would be inherent in his continued representation of the defendant, unless the witness would waive his attorney-client privilege, or the defendant would waive his right to be represented by counsel who bears him undivided loyalty. [503-505]

Discussion of the conditions under which a judge properly may find that a defendant at a criminal trial has waived the right to be represented by an attorney who bears him undivided loyalty. [507-509]

In the circumstances of a criminal case, the defendant could voluntarily, knowingly, and intelligently consent to the continued representation by his attorney despite the presence of a conflict of interest which created a divided loyalty in the attorney between the defendant and a prosecution witness who had earlier made privileged communications to the attorney. [508-509]

INDICTMENT found and returned in the Superior Court Department on June 21, 1982.

Questions of law were reported to the Appeals Court by *Sandra L. Hamlin*, J. The Supreme Judicial Court granted a request for direct review.

*Willie J. Davis* for the defendant.

*David C. Phalen*, Assistant District Attorney (*Charles J. Hely*, Assistant District Attorney, with him) for the Commonwealth.

LIACOS, J. In June, 1982, a Norfolk County grand jury indicted the defendant, Lawrence Goldman, for conspiracy to murder a former Boston police officer named John Glenn. When it became apparent that the Commonwealth would call Glenn as a witness at the defendant's trial, defense counsel, Mr. Willie J. Davis, filed a motion in limine seeking a pretrial ruling on a question concerning the attorney-client privilege. Following a hearing, a Superior Court judge made certain findings of fact and ruled on the motion. She then reported to the Appeals Court four questions raised by the motion. See Mass. R. Crim. P. 34, 378 Mass. 905 (1979). This court allowed the defendant's application for direct appellate review.

We summarize the facts as found by the judge. In January, 1982, Glenn made an unsuccessful attempt to murder an individual named Leo Shorter. The Commonwealth theorizes that the defendant, a codefendant in this case named John Miskel, and others hired Glenn to kill Shorter because Shorter had cheated the defendant in a drug deal. A Norfolk County grand jury indicted Glenn for assault with intent to murder Shorter. Shortly after his arraignment in January, 1982, Glenn met with Mr. Davis concerning the possibility of Mr. Davis's representing Glenn. Glenn and Mr. Davis discussed the indictment; Glenn gave confidential information about the case to Mr. Davis. They reached no agreement, however, concerning Mr. Davis's representation of Glenn, and Mr. Davis did not represent Glenn at his trial.

Following a trial in the Superior Court in Norfolk County, Glenn was convicted. His sentencing has been continued pending his testimony in the instant case. In this case, the Commonwealth alleges that, after Glenn's unsuccessful attempt to kill

Shorter, the defendant conspired with Miskel to kill Glenn, and that Miskel unsuccessfuly attempted to kill Glenn.[1]

After Mr. Davis filed the motion in limine, the judge held an in camera hearing at which Mr. Davis testified as to the substance of his conversation with Glenn.[2] Based on the testimony and exhibits, the judge found that in March, 1983, after his conviction, Glenn began to cooperate with the Commonwealth concerning his association with Miskel, the defendant, and others. Glenn gave statements relative to the attempt on the life of Shorter to officers of the Quincy police department. These statements were recorded, and, later, a transcription of them was made available to Mr. Davis as counsel for the defendant. The statements Glenn made to Mr. Davis are "diametrically opposed" to those which Glenn gave to Quincy police officers. Glenn is a key prosecution witness, and his credibility will be a central issue in the upcoming trial. Glenn's statements to Mr. Davis could be viewed by a reasonable juror as seriously damaging Glenn's credibility if he should testify in accordance with his taped statements. Glenn invokes the attorney-client privilege with respect to his conversation with Mr. Davis and refuses to waive it. Glenn has indicated his continuing intention not to waive the privilege.

The judge reported the following questions:

"1. Whether a witness waives the attorney-client privilege in regard to confidential communications previously made to an attorney concerning certain events, now the subject matter of this trial, when that witness takes the stand at trial and gives testimony as to those events, but specifically refuses to waive the attorney-client privilege as to the confidential communications.

"2. If not, whether the privilege should be overridden in the interest of justice.

---

[1] The defendant and Miskel also have been indicted on charges arising out of Glenn's attempt on Shorter's life.

[2] We make no comment on the propriety of such an in camera disclosure of privileged communications absent the consent of the client.

"3. Whether defendant's attorney, to whom the Commonwealth's witness previously made confidential communications is required to withdraw because of the conflict of interest [which would] be inherent in his (the attorney's) continued representation of the defendant.

"4. Whether the defendant can voluntarily, knowingly, and intelligently consent to the continued representation by his attorney despite the conflict of interest where, because of the attorney-client privilege, full disclosure cannot be made by counsel to the defendant."[3]

We hold that, by testifying in the instant case, Glenn does not automatically waive the attorney-client privilege concerning his conversation with Mr. Davis, and that, on this record, justice does not require that the privilege be overridden. Although a genuine conflict of interest exists which may require withdrawal by Mr. Davis, the defendant may consent to his continued representation by Mr. Davis, so long as his consent is voluntarily, knowingly, and intelligently made.

1. *Waiver of attorney-client privilege.*[4] For over a century, Massachusetts case law has been in conflict on the issue whether a witness waives the attorney-client privilege when testifying. *Neitlich* v. *Peterson*, 15 Mass. App. Ct. 622, 626 (1983). P.J. Liacos, Massachusetts Evidence 215 (5th ed. 1981). Spalding, The Uncertain State of the Law as to Waiver of Professional Privilege as to Confidential Communications, 20 Mass. L.Q. (No. 3) 16, 17 (1935). In *Woburn* v. *Henshaw*, 101 Mass. 193, 200 (1869), the source of one line cases, this court ruled

---

[3] In ruling on the motion, the judge answered these questions as follows: (1) "No"; (2) "No"; (3) "Yes"; (4) "No." Consequently, she ordered that Mr. Davis withdraw as the defendant's counsel.

[4] We note that Mr. Davis does not dispute that the statements made by Glenn to him in January, 1982, came within the purview of the attorney-client privilege, even though he did not become Glenn's defense counsel. See *Mailer* v. *Mailer*, 390 Mass. 371, 374 (1983); *Commonwealth* v. *O'Brien*, 377 Mass. 772, 775 (1979); *Vigoda* v. *Barton*, 348 Mass. 478, 485-486 (1965).

that "[t]he policy of the law will not allow the counsel himself to make disclosures of confidential communications from his client; but if the client sees fit to be a witness, he makes himself liable to full cross-examination like any other witness. This is true even as to defendants in criminal cases. *Commonwealth v. Mullen*, 97 Mass. 545 [1867]."[5]

The court next relied on the doctrine established in *Woburn* in *Commonwealth* v. *Barronian*, 235 Mass. 364, 367 (1920), where, over his objection, the defendant was asked on cross-examination about conversations with his attorney. Citing *Woburn*, the court stated that the "defendant has no valid ground for complaint." *Barronian, supra*. The rule in *Woburn* was then cited in *Gossman* v. *Rosenberg*, 237 Mass. 122, 124 (1921), in which the court held that a witness could claim no privilege as to trade secrets and stated in dictum that "a voluntary witness waives every personal privilege." *Woburn* was again cited in *Knowlton* v. *Fourth-Atlantic Nat'l Bank*, 264 Mass. 181, 196 (1928). This case, however, does not follow from the broad doctrine of the *Woburn* case. In *Knowlton*, the witness testified as to the substance of a specific conversation with his attorney. Thus, in reviewing the propriety of a question calling for the attorney to testify as to the conversation, this court held that the client had waived the privilege.

The contrary line of cases, holding that a witness's taking the stand, by itself, does not produce a wholesale waiver of the privilege, began with *Montgomery* v. *Pickering*, 116 Mass. 227, 231 (1874). *Montgomery* was followed by *Blount* v. *Kimpton*, 155 Mass. 378, 380 (1892), and *McCooe* v. *Dighton, Somerset, & Swansea St. Ry.*, 173 Mass. 117, 119 (1899). More recently, in *Kendall* v. *Atkins*, 374 Mass. 320, 325 (1978), we assumed, without deciding, that the plaintiff properly could claim the privilege after having testified in her own behalf.

In his argument the defendant apparently confuses two distinct scenarios. In the first, a witness testifies as to events

---

[5] The court in *Woburn* made an erroneous analogy to *Commonwealth* v. *Mullen, supra*, which held that, upon testifying, a criminal defendant waives the privilege against self-incrimination. Spalding, *supra* at 18.

which happen to have been a topic of a privileged communication. In the second, the witness testifies as to the specific content of an identified privileged communication. We believe that the privilege is not waived in the first example, and we decline to follow that line of cases, based on *Woburn* v. *Henshaw, supra,* which appear to be to the contrary. A waiver may be found, however, where the client testifies as to the content of a privileged communication. *Neitlich* v. *Peterson, supra* at 626-627. See *Montgomery* v. *Pickering, supra.* Cf. Proposed Mass. R. Evid. 510 (1980).[6]

"[T]estimony about an event . . . should not be construed as a waiver of the privilege, merely because the subject matter of the testimony may also have been discussed in the privileged communication," *People* v. *Lynch,* 23 N.Y.2d 262, 271 (1968); waiver of the attorney-client privilege should not be implied from a witness's taking the stand. See *People* v. *Shapiro,* 308

---

[6] Some of the cases on which the defendant relies involve testimony as to specific privileged conversations, rather than to events which were a topic of a privileged conversation. See, e.g., *In re Sealed Case,* 676 F.2d 793, 808-809 (D.C. Cir. 1982). Another case cited by the defendant, *United States* v. *Jones,* 696 F.2d 1069, 1072 (4th Cir. 1982), is inapposite for a different reason. In *Jones* the court held that a waiver occurred because the clients publicized portions of their attorneys' tax law opinions in brochures, a disclosure inconsistent with maintaining the confidential nature of the attorney-client relationship.

The defendant also relies on *United States* v. *Bump,* 605 F.2d 548, 550-551 (10th Cir. 1979). While at first the case appears to support the defendant's argument, it too is distinguishable. In *Bump,* a criminal defendant's attorney told the prosecutor that the defense intended to introduce certain evidence. When the defense then failed to introduce the evidence, the prosecutor asked the defendant on cross-examination whether he had "ever told anybody in connection with this case" about such evidence. The trial judge overruled defense counsel's objection to the question, which was based on the ground that the question invaded the attorney-client privilege. The Court of Appeals for the Tenth Circuit upheld the trial judge's action, ruling that "[w]hen a matter is communicated to the lawyer with the intention or understanding it is to be repeated to another, the content of the statement is not within the privilege." *Id.* at 551. The court continued: "Even if the privilege exists it is waived when the client voluntarily reveals the information to another or his attorney does so with his consent." *Id.* In the instant case Glenn is not expected to reveal details of his conversation with Mr. Davis; he will be testifying about events which fortuitously were a topic of that conversation.

N.Y. 453, 457-460 (1955). Glenn is expected to testify about certain events which took place, not about the specifics of his conversation with Mr. Davis. Such testimony cannot be considered a waiver of the attorney-client privilege.[7]

The defendant argues, however, that, even where there is no waiver of the privilege, the interests of justice require that it be overridden. Apropos of the defendant's argument is the rule set forth in Annot., 51 A.L.R.2d 521, 528 (1957), that "where an accomplice turns state's evidence and attempts to convict others by testimony which also convicts himself, he thereby waives the privilege against disclosing communications between himself and counsel." See *id.*, cases cited. The rationale underlying this approach was described in *Jones* v. *State*, 65 Miss. 179, 184 (1887): "The reason for maintaining such privileges ceases, when one has voluntarily exposed himself by his own testimony, to the very consequences from which it was intended by the privilege to protect him. To preserve such privilege in such case would be worse than vain, for while it could not help the witness, it might, by withholding the only means of contradicting and impeaching him, operate with the greatest injustice towards the party on trial." That Glenn is the victim of, rather than accomplice to, the crime does not serve to make this rationale inapplicable; Glenn is expected to testify about events for which he has already been convicted.

Nevertheless, the policy justifications for the attorney-client privilege override the reasoning of the court in *Jones* and support the judge's conclusion that, on this record, the privilege

---

[7] Cf. Mass. Bar Ass'n Comm. on Professional Ethics, Opinion No. 84-3 (1984) (attorney-client privilege continues despite fact that the confidential information has become notorious). We do not reach the question whether the fact that Glenn had consulted Mr. Davis with regard to the charges against him or had had a confidential conversation relative to those matters with Mr. Davis is within the scope of the privilege. See *In re Grand Jury Investigation*, 631 F.2d 17, 19 (3d Cir. 1980), cert. denied, 449 U.S. 1083 (1981); *Matter of Walsh*, 623 F.2d 489, 494 (7th Cir. 1980). Nor need we decide whether an adverse comment can be made as to the claim of the privilege, should Glenn assert it before the jury. See *Neitlich* v. *Peterson,* *supra* at 628. Cf. Proposed Mass. R. Evid. 512 (1980).

should not yield in the interest of justice.[8] The privilege operates to protect disclosures which might not have been made absent the privilege. *Fisher* v. *United States*, 425 U.S. 391, 403 (1976). It encourages clients to seek an attorney's advice and to be truthful with the attorney, which in turn allows the attorney to give informed advice; the attorney-client privilege serves the public interest and the interest of the administration of justice. *Upjohn Co.* v. *United States*, 449 U.S. 383, 389 (1981). *Matter of Colton*, 201 F. Supp. 13, 15 (S.D.N.Y. 1961), aff'd, 306 F.2d 633 (2d Cir. 1962), cert. denied, 371 U.S. 951 (1963). *United States* v. *United Shoe Mach. Corp.*, 89 F. Supp. 357, 358 (D. Mass. 1950). We reject the rationale of *Jones*. In this case, the "social good derived from the proper performance of the functions of lawyers acting for their clients . . . outweigh[s] the harm that may come from the suppression of the evidence." *United Shoe, supra*, quoting Model Code of Evidence Rule 210 comment a (1942).

In conclusion, we choose to follow the rule stated in 8 J. Wigmore, Evidence § 2327, at 637 (McNaughton rev. 1961): "The client's offer of his *own testimony* in the cause *at large* is not a waiver for the purpose either of cross-examining him to the communications or of calling the attorney to prove them. Otherwise the privilege of consultation would be exercised only at the penalty of closing the client's own mouth on the stand." (Emphasis in original.) See *Littlefield* v. *Superior Court*, 136 Cal. App. 3d 477, 483-485 (1982); *State* v. *Hollins*, 184 N.W.2d 676, 678 (Iowa 1971); *Dunn* v. *Commonwealth*, 350 S.W.2d 709, 713 (Ky. 1961). Accordingly, we agree with the judge that the proper anwer to reported questions (1) and (2) is "No."

---

[8] We emphasize that, absent a trial, neither we nor a trial judge can resolve the question whether the common law attorney-client privilege would have to yield to a constitutionally based claim of denial of the right of confrontation or of the right to a fair trial. See, e.g., *Davis* v. *Alaska*, 415 U.S. 308 (1974) (statutory privilege as to juvenile proceedings must yield to confrontation right to cross-examine effectively as guaranteed by Sixth and Fourteenth Amendments); *Commonwealth* v. *Ferrara*, 368 Mass. 182 (1975) (same); *Commonwealth* v. *Joyce*, 382 Mass. 222 (1981) (rape-shield law, G. L. c. 233, § 21B, interpreted so as to protect confrontation right of cross-examination to show bias).

2. *Conflict of interest.* The defendant argues that, should we hold that Glenn does not waive the attorney-client privilege by testifying, no conflict of interest arises. He maintains that ethical considerations present themselves only if Mr. Davis testifies, and is then faced with arguing his own credibility. We disagree. Mr. Davis will face a genuine conflict of interest in his cross-examination of Glenn.

A conflict of interest arises whenever an attorney's regard for one duty leads to disregard of another. *United States* v. *Miller*, 463 F.2d 600, 602 (1st Cir.), cert. denied sub nom. *Gregory* v. *United States*, 409 U.S. 956 (1972). In the instant case, Mr. Davis has a clear duty to maintain the confidence of his former client Glenn. S.J.C. Rule 3:07, Canon 4, DR 4-101(B), as amended, 382 Mass. 778 (1981). *Mailer* v. *Mailer*, 390 Mass. 371, 374 (1983). *Commonwealth* v. *O'Brien*, 377 Mass. 772, 775 (1979). *Dunn* v. *Commonwealth, supra.* Model Code of Professional Responsibility, EC 4-6 (1969).[9] At the same time, Mr. Davis must zealously represent the defendant. S.J.C. Rule 3:07, Canon 7, as appearing in 382 Mass. 784 (1981). He must avoid representing a client where the interests of another, former client may impair his independent professional judgment. S.J.C. Rule 3:07, Canon 5, as appearing in 382 Mass. 779 (1981).[10]

---

[9] Although not adopted by this court, the ethical considerations appearing in the American Bar Association's Code of Professional Responsibility and Canons of Judicial Ethics may be relied on in interpreting the Canons of Ethics and Disciplinary Rules. *Commonwealth* v. *Michel*, 381 Mass. 447, 456 n.17 (1980).

[10] Such a conflict of interest may later give rise to a claim by a criminal defendant that he received ineffective assistance of counsel. See, e.g., *Commonwealth* v. *Cobb*, 379 Mass. 456, vacated sub nom. *Massachusetts* v. *Hurley*, 449 U.S. 809 (1980), appeal dismissed, 382 Mass. 690 (1981). In *Commonwealth* v. *Hodge*, 386 Mass. 165 (1982), we refused to apply to art. 12 of the Massachusetts Declaration of Rights the requirement of *Cuyler* v. *Sullivan*, 446 U.S. 335 (1980), that under the Sixth Amendment to the Constitution of the United States a criminal defendant must show that an actual conflict of interest adversely affected his lawyer's performance. We held that under art. 12, having established a genuine conflict of

During cross-examination of Glenn, Mr. Davis will confront a genuine conflict of interest. On behalf of the defendant, Mr. Davis will likely cross-examine Glenn in an effort to impeach his credibility. During this cross-examination, Mr. Davis must avoid using any confidential information which he may have obtained from Glenn in their privileged conversation of January, 1982. "The conflict [thus] engendered in the attorney's own mind may have unmeasurable adverse effects on the client's interests." *Commonwealth* v. *Rondeau*, 378 Mass. 408, 416 n.7 (1979). Conflicts such as the one here at issue have resulted in court-ordered substitution of counsel, in remand orders, and in successful petitions for habeas corpus. See, e.g., *Lace* v. *United States*, 736 F.2d 48 (2d Cir. 1984); *United States* v. *Vargas-Martinez*, 569 F.2d 1102 (9th Cir. 1978); *Zurita* v. *United States*, 410 F.2d 477 (7th Cir. 1969); *Tucker* v. *United States*, 235 F.2d 238 (9th Cir. 1956); *Cowell* v. *Duckworth*, 512 F. Supp. 371 (N.D. Ind. 1981); *United States* v. *LaVallee*, 282 F. Supp. 968 (E.D.N.Y. 1968). But see *United States* v. *Alberti*, 470 F.2d 878 (2d Cir. 1972), cert. denied, 411 U.S. 919 (1973) (defendant may have derived advantage from fact of defense counsel's earlier representation of prosecution witness). Cf. *Commonwealth* v. *Pires*, 389 Mass. 657, 662 (1983) (record bare of any suggestion that defense counsel had been given confidential information that might inhibit his advocacy of the defendant's defense); *Commonwealth* v. *Wright*, 376 Mass. 725, 731 (1978) (no offer of proof or showing that defense counsel had confidential information which inhibited his cross-examination); *Commonwealth* v. *Smith*, 362 Mass. 782, 784 (1973) (defendant might be entitled to relief if defendant can demonstrate that his attorney had been given confidential information by the witness that served to restrict the attorney's cross-examination of that witness); *Commonwealth* v. *Walter*, 19 Mass. App. Ct. 82, 91 (1984) (no showing defense attorney had confidential information from potential defense witness).

interest, a defendant need not prove prejudice or adverse effect. *Hodge, supra* at 170. Where a "tenuous," as opposed to "genuine," conflict of interest appears, a defendant must establish that the conflict of interest resulted in material prejudice. *Commonwealth* v. *Soffen*, 377 Mass. 433, 435-440 (1979).

Mr. Davis correctly brought this matter to the judge's atten-
tion so that the issue could be resolved in a pretrial posture.
Cf. *Commonwealth* v. *Michel,* 381 Mass. 447, 454 (1980)
(counsel attempted to terminate his relationship with prosecu-
tion witness on the fifth day of defendant's trial). We cannot,
however, disregard the fact that Mr. Davis will be inhibited,
even if only subconsciously, in his representation of the defend-
ant because of his knowledge of privileged information. We
answer the third reported question: A genuine conflict of in-
terest exists which requires that Mr. Davis withdraw, unless
Glenn waives his attorney-client privilege, which the judge
has found he will not, or unless the defendant waives his right
to be represented by counsel who bears him undivided loyalty.[11]
We now turn to the remaining reported question.

3. *Waiver of right to an attorney with undivided loyalty.*
The Superior Court judge noted that the defendant has indicated
a desire to waive representation by an attorney with undivided
loyalty. A defendant's right to have the effective assistance of
counsel, guaranteed by the Sixth Amendment to the Constitu-
tion of the United States, contemplates that the assistance be
"untrammeled and unimpaired . . . free of any conflict of
interest and unrestrained by commitments to others." *Common-
wealth* v. *Davis,* 376 Mass. 777, 780-781 (1978). *Glasser* v.
*United States,* 315 U.S. 60, 76 (1942). A defendant, however,
may waive this right to an attorney "unhindered by a conflict
of interests." *Commonwealth* v. *Connor,* 381 Mass. 500, 504
(1980), quoting *Holloway* v. *Arkansas,* 435 U.S. 475, 483 n.5
(1978). The ability to waive the right to a conflict-free attorney
arises from (1) a criminal defendant's right to present his de-
fense, with its corollary right of self-representation, and (2)
his right to be represented by counsel of choice. *Connor, supra,*

---

[11] See Developments in the Law, Conflicts of Interest in the Legal Profes-
sion, 94 Harv. L. Rev. 1244, 1376-1378 (1981); Mass. Bar Ass'n Comm.
on Professional Ethics, Opinion Nos. 75-7 (1975), 76-12 (1976), 77-1
(1977); State Bar of Cal. Standing Comm. on Professional Responsibility
& Conduct, Opinion No. 1980-52 (1980); Bar Ass'n of Greater Cleveland
Professional Ethics Comm., Opinion No. 150 (1983); Vermont Bar Ass'n
Comm. on Professional Responsibility, Opinion No. 83-6 (1983).

citing *Faretta* v. *California*, 422 U.S. 806, 818, 833 (1975). *Davis, supra* at 787 n.12.[12]

The judge ruled that, although an argument can be made that the defendant's waiver may be voluntary, the defendant cannot make a "knowing and intelligent" waiver; because the information is privileged, the defendant cannot know what the information is and, therefore, cannot know how his defense will be affected. We think that this ruling is incorrect. The defendant need not know the exact content of the privileged communication to make an informed decision. Presumably, the defendant will be informed that Glenn's anticipated testimony is "diametrically opposed" to the privileged communication, and from that basis the defendant will be able to extrapolate any effect that Mr. Davis's constrained cross-examination will have on his defense.

---

[12] But see *United States* v. *Vargas-Martinez, supra* at 1104 (defendant's choice of counsel may be subordinate to the proper administration of justice); Developments in the Law, *supra* at 1394 & n.120 (arguing that a defendant's right to an attorney with undivided loyalty does not give him the opposite of that right — the right to an attorney whose loyalities are divided — even if the choice is voluntarily and intelligently made, when the conflict substantially impairs the quality of representation). The language in *Davis, supra* at 787 n.12, appears contra: "If defendants may forgo their rights to be represented by counsel altogether, it would seem a fortiori that they may waive the right to have counsel free from conflicts of interest." *Connor*, however, qualifies *Davis* by stating that "[t]he right, however, is not absolute, and may, in some circumstances, be subordinate to the proper administration of justice. . . . A judge therefore must have some discretion to disqualify a conflict-burdened attorney when the conflict might well restrict or prevent counsel's fulfilment of his role. . . . Such power is 'to be exercised sparingly and when the need is apparent and pressing and only after careful consideration, but with the power goes the duty to exercise it on proper occasions.' *Collins* v. *Godfrey*, 324 Mass. 574, 579 (1949)." *Commonwealth* v. *Connor, supra* at 503. We note further that the essence of the court's position in *Connor* is that a trial judge has the power to protect the judicial system from "manipulative behavior" by a defendant who purports to elect a waiver but wishes to preserve the conflict issue for appeal. See *Connor, supra* at 505-506 & n.6. As we read the judge's rulings in this case, it does not appear that she exercised her discretion on this basis, but rather that she concluded that the defendant could exercise no waiver.

Before remanding the case to the Superior Court, we discuss the conditions under which a judge properly may find that a defendant has waived the right to an attorney with undivided loyalty. First, a finding of waiver of a constitutional right to counsel should not be made lightly. See *Commonwealth* v. *Cavanaugh*, 371 Mass. 46, 53 (1976). Courts should indulge " 'every reasonable presumption against waiver' of [a] fundamental constitutional right[ ] and . . . 'not presume acquiescence in the loss of [such] rights.' " *Johnson* v. *Zerbst*, 304 U.S. 458, 464 (1938), quoting *Aetna Ins. Co.* v. *Kennedy*, 301 U.S. 389, 393 (1937), and *Ohio Bell Tel. Co.* v. *Public Utils. Comm'n*, 301 U.S. 292, 307 (1937). The waiver must be an "intentional relinquishment or abandonment of a known right," *Zerbst, supra*, not only voluntary but also a "knowing, intelligent act[ ] done with sufficient awareness of the relevant circumstances and likely consequences." *Brady* v. *United States*, 397 U.S. 742, 748 (1970).

Thus, the judge should require that the defendant receive a full disclosure of the conflict and its projected ramifications.[13] The judge actively should participate in the waiver decision, seeking "to elicit a narrative response from [the] defendant that he has been advised of his right to effective representation, that he understands the details of his attorney's . . . conflict of interest and the potential perils of such a conflict, that he has discussed the matter with his attorney or if he wishes with outside counsel, and that he voluntarily waives his Sixth Amendment protections."[14] *United States* v. *Garcia*, 517 F.2d 272, 278 (5th Cir. 1975). *United States* v. *Alberti*, 470 F.2d 878, 881-882 (2d Cir. 1972). Cf. *Brady, supra* at 747 n.4.

---

[13] Included in these ramifications is the possibility that, if Mr. Davis becomes a witness at trial, he will at least suffer diminished credibility both as a witness and as defense counsel, or, indeed be required to withdraw as defense counsel. See S.J.C. Rule 3:07, Canon 5, DR 5-102. See also S.J.C. Rule 3:08, DF 6, as appearing in 382 Mass. 804 (1981).

[14] In some circumstances it is sensible for the judge "to *ensure* that a defendant has had the advice of independent counsel before finding the defendant's waiver valid" (emphasis supplied). *Connor, supra* at 505 n.5. See also Developments in the Law, *supra* at 1313.

A record of the waiver colloquy between the defendant and the judge should be made in which the language of the waiver is clear, unequivocal, and unambiguous. Such a record should help shield any potential conviction from collateral attack on Sixth Amendment grounds. See *Commonwealth* v. *Wooldridge*, 19 Mass. App. Ct. 162 (1985); *United States* v. *Partin*, 601 F.2d 1000, 1008 (9th Cir. 1979), cert. denied, 446 U.S. 964 (1980); *United States* v. *Garcia, supra*; *United States* v. *Frame*, 454 F.2d 1136, 1138 (9th Cir.), cert. denied, 406 U.S. 925 (1972). The trial judge also should consider the background, experience, and conduct of the defendant. Cf. *Zerbst, supra* (assessing defendant's background, experience, and conduct in determining, after the trial, whether a valid waiver of counsel was made); *Partin, supra* at 1007.

Finally, in a rare instance, in ruling on the validity of a defendant's waiver, the trial judge may take into account, aside from the rights of the defendant, the interests of the court in the "fair and proper administration of justice." *Connor, supra* at 504. Counsel's undivided loyalty to the client is crucial to the integrity of the entire adversary system. *Commonwealth* v. *Leslie*, 376 Mass. 647, 652 (1978), cert. denied, 441 U.S. 910 (1979). See *id.* at 656, 658 (Liacos, J., concurring); *Kabase* v. *Eighth Judicial Dist. Court,* 96 Nev. 471, 472 (1980); Developments in the Law, *supra* at 1394. In criminal cases, the public has a substantial interest in the fairness of the process and its expeditious administration. This principle, however, cannot, in most instances, overcome the right of a defendant to choose his counsel, even if that attorney is conflict-burdened, provided the defendant's waiver is voluntary, knowing, and intelligent. Thus, we conclude that the judge erred in answering the fourth reported question, "No." We hold that the defendant can waive his right to a conflict-free counsel in the circumstances of this case. Whether he will do so on being fully advised of his rights in accordance with the procedures and principles set forth in this opinion is unclear. We express no views whether the judge should exercise her discretion to override, in the interests of the administration of justice, such a waiver should it be exercised. Accordingly, we vacate the

judge's order requiring Mr. Davis to withdraw and remand this case to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*